25-4432

# MSP PRISONER REQUEST/AUTHORIZATION FOR ELECTRONIC FILING IN THE U.S. FEDERAL COURT FOR THE 9TH CIRCUIT COURT OF APPEALS

Complete this form for documents you want filed in the U.S. Federal Court for the 9th Circuit Court of Appeals

| Prisoner Name (Last, First, M.I.) | Prisoner ID# | Federal Court Case #: |
|---|---|---|
| Rodriguez, Juan Anastasio | 3005929 | 25-4432 |

List each document separately

| No. | Document Name/Description of document to be Filed | Number of pages: |
|---|---|---|
| 1 | Appellant's Informal Opening Brief | 49 |
| 2 | Certificate of Service | 1 |
| 3 | | |
| 4 | | |
| 5 | | |

Documents submitted for filing to the 9th Circuit are matters of public record. They are not considered "legal correspondence" pursuant to MSP Policy 3.3.6 and are not subject to the procedures set forth in MSP Policy 3.3.6(III)(C) or 3.3.6(III)(D).

## **YOU DO NOT HAVE THE RIGHT TO BE PRESENT FOR SCANNING**

I hereby certify that the attached filing meets the following criteria: (initial each line):

_SHR_ My document is typed or neatly handwritten on 81/2" x 11" paper in black or blue ink on white paper.

_SHR_ My document is written on only one side of each sheet of paper.

_SHR_ My document has 1" margins at the top, bottom, left and right sides of the page.

_SHR_ My document is signed and dated.

_SHR_ Each page of my document is clearly numbered.

_SHR_ My document is not stapled or otherwise bound.

_JHR_ My document does not contain original discovery requests or settlement/mediation statements.

_JHR_ My document is enclosed in an appropriate envelope.

Signed: _____ Date: 3-27-2026

(Prisoner's signature)          (Date submitted to prison officials for scanning)

***STAFF USE ONLY***
Do not write in this box

Date received: 3/27/26
Date scanned: 3/30/26
Date originals returned to prisoner: _____

pg 1 of 49

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JUAN ANASTASIO RODRIGUEZ

Appellant(s),

vs.

STATE OF MONTANA; et al.,

Appellee(s).

9th Cir. Case No.  25-4432

District Court or
BAP Case No.  6:17-cv-00104-BMM

## APPELLANT'S INFORMAL OPENING BRIEF

*(attach additional sheets as necessary, up to a total of 50 pages including this form)*

**JURISDICTION.** This information helps the court determine if it can review your case.

1.   Timeliness of Appeal:

   a.   What is the date of the judgment or order that you want this court to review? June 12, 2025 (D.Ct. Doc. 250 and 251)

   b.   Did you file any motion, other than for fees and costs, after the judgment was entered? Answer yes or no:  N/A

      • If you did, on what date did you file the motion? N/A

      • For prisoners or detainees, what date did you give the motion to prison authorities for mailing?  N/A  , 2025

      • What date did the district court or bankruptcy appellate panel (BAP) decide the motion that you filed after judgment?  N/A

   c.   What date did you file your notice of appeal?  July 10, 2025

      • For prisoners or detainees, what date did you give your notice of appeal to prison authorities for mailing?  July 10, 2025

9th Cir. Case No. ___25-4432___                    Page 2 of 49

**FACTS.** Include all facts that the court needs to know to decide your case.

2.    What are the facts of your case?

     See Attachment

9th Cir. Case No.                                     Page 2 of 49

9th Cir. Case No. _25-4432_____        Page 3 of 49

**PROCEEDINGS BEFORE THE DISTRICT COURT OR THE BAP.** In this section, we ask you about what happened before you filed your notice of appeal with this court.

3. What did you ask the district court or the BAP to do—for example, did you ask the court to award money damages, issue an injunction, or provide some other type of relief?

Plaintiff Juan Anastasio Rodriguez filed this federal civil action on November 6, 2017, seeking (1) to invalidate the state-court termination orders of his parental rights to his Indian children J.R. and B.R. under I.C.W.A. 25 U.S.C. § 1914 and (2) to recover damages under 42 U.S.C. § 1983 for due-orocess, equal-protection, and I.C.W.A. violations.

4. What legal claim or claims did you raise in the district court or at the BAP?

Violoations of the I.C.W.A. 25 U.S.C.§§ 1911(a), 1912(a), 1912(b), 1912(c), 1912(d), 1912(e), and 1912(f),pursuant to 25 U.S.C. § 1914, and for due-procss, equal-protection, and I.C.W.A. violations under 42 U.SʔC. § 1983

5. **Exhaustion of Administrative Remedies.** For prisoners, did you use up all administrative remedies for each claim before you filed your complaint in the district court? If you did not, please tell us why.
N/A

9th Cir. Case No. ___25-4432___

Page 4 of 49

## PROCEEDINGS BEFORE THE COURT OF APPEALS. In this section, we ask you about issues related to this case before the court of appeals and any previous cases you have had in this court.

6.  What issues are you asking the court to review in this case? What do you think the district court or the BAP did wrong?

Please See Attachment

7.  Did you present all issues listed in Question 6 to the district court or the BAP? Answer yes or no: __YES__

If not, why not?

9th Cir. Case No. _25-4432_____          Page 5 of 49

8.   What law supports these issues on appeal? (You may refer to cases and
     statutes, but you are not required to do so.)

Please See Attachment

9th Cir. Case No. _25-4432_____          Page 5 of 49

9th Cir. Case No. __25-4432_____      Page 6 _of_ 49

9. **Other Pending Cases.** Do you have any other cases pending in the court of appeals? If so, give the name and docket number of each case.

NO

10. **Previous Cases.** Have you filed any previous cases that the court of appeals has decided? If so, give the name and docket number of each case.

1)   19-35000     Juan Rodriguez v. State of Montana, et al.,

2)   23-35351     Juan Rodriguez v. State of Montana, et al.,

3)   24-4309      Juan Rodriguez v. Montana Department of Health and Human Services et al.,

__Juan Anastasio Rodriguez, AO 3005929__
Name
__700 Conley Lake Rd._____

__Deer Lodge, MT 59722_____

__Montana State Prison_____
Address

_____
Signature

__3-27-2026_____
Date

*Attachment*

**25-4432**

## STATEMENT OF THE CASE AND FACTS

This appeal arises from a final judgment entered June 12, 2025 (Doc. 251), dismissing all remaining claims brought by Appellant Juan Anastasio Rodriguez under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1914, and 42 U.S.C. § 1983. The judgment followed a line of dispositive rulings culminating in the District Court's order of December 23, 2024 (Doc. 231), which granted summary judgment for the Montana Department of Public Health and Human Services ("DPHHS") and dismissed the last surviving ICWA claim. The District Court later entered final judgment in favor of all defendants on June 12, 2025 (Doc. 251). This appeal timely followed.

### I. State Proceedings and Termination of Parental Rights

#### A. Initial Removal and Early Tribal Involvement (2009 – 2012)

DPHHS first became involved with Rodriguez's wife—S.R., and their two Indian children—J.R. (b. 2005) and B.R. (b. 2007)—in September 2009 following allegations of domestic disturbances and neglect. (Cause Nos. ADN-09-071 and ADN-09-072). The children are enrolled members of the Chippewa Cree Tribe of the Rocky Boy's Reservation. In 2012, after nearly three years of state supervision, the Montana Eighth Judicial District Court transferred jurisdiction to the Chippewa Cree Tribal Court pursuant to 25 U.S.C. § 1911(b) and § 1918, and the Tribal Court accepted jurisdiction, opening Case Nos. 2012-cv-cc-1418 and 1419.

While the tribal matters were pending, however, new state proceedings were initiated after a September 28, 2012 incident in Great Falls in which DPHHS seized the children despite the family's domicile on the Rocky Boy's Reservation and J.R. ~~(b. 2005)~~ and B.R being wards of Trible Court. On October 5, 2012, DPHHS filed petitions for emergency legal custody in the Cascade County District Court (Cause Nos. ADN-12-150 & ADN-12-151). The petitions alleged "physical neglect and psychological abuse" and were granted ex parte by Judge McKittrick, who issued emergency protective orders without an evidentiary hearing or qualified ICWA expert testimony. The Chippewa Cree Tribe was not formally notified until October 19, 2012—twenty-one days after removal.

#### B. Adjudication, Treatment Plans, and State Custody (2013 – 2014)

On February 20, 2013, the court adjudicated J.R. and B.R. "Youths in Need of Care," and on March 6, 2013, ordered DPHHS to develop treatment plans for both parents. Temporary custody was repeatedly extended through April 2014 while the parents attempted ████████████to complete their plans. Though DPHHS acknowledged that the children were "Indian children" within ICWA's meaning, it continued to exercise state jurisdiction without transferring the proceedings back to the Tribal Court.

#### C. Termination of Parental Rights (2014 – 2015)

After multiple extensions, DPHHS petitioned to terminate parental rights in June 2014. The *second* termination hearings were held December 12, 2014, June 25, 2015, and June 29, 2015 before Judge Gregory Pinski. DPHHS presented twenty-one witnesses, including child-protection specialists, counselors, and an ICWA expert, Anna Fisher, who testified that continued custody by Rodriguez' *wife* was likely *but that custody by Rodriguez himself would NOT* to result in serious emotional or physical damage to the children". On July 13, 2015, the District Court terminated Rodriguez's parental rights on multiple statutory grounds and entered permanent legal custody to DPHHS, concluding beyond a reasonable doubt that DPHHS had made "active efforts" under 25 U.S.C. § 1912(d) and (f) and that continued custody by Rodriguez would cause serious harm to the children. *which was contrary to testimony and evidence in the record at trial.*

The Montana Supreme Court affirmed in a memorandum decision, In re B.R. & J.R., 2016 MT 234N, and the U.S. Supreme Court denied certiorari, 581 U.S. 977 (2017).

### II. Federal Proceedings

#### A. Initial Complaint and Early Dispositions (2017 – 2020)

*pg 7 of 49*

25-4432

Rodriguez filed this federal civil action on November 6, 2017 (Doc. 2), seeking (1) to invalidate the state-court termination orders under ICWA § 1914 and (2) to recover damages under § 1983 for alleged due-process, equal-protection, and ICWA violations. The complaint was later amended (Doc. 42).

In 2020, the District Court dismissed all but one claim—Rodriguez's request to invalidate the termination under § 1914—holding that it was not barred by the domestic-relations abstention doctrine and could proceed to summary judgment (Doc. 95 at 18).

B. Amended Pleadings and Summary Judgment (2021 – 2024)  *(Doc. 42) in 2020 and (Doc. 235) in 2025*

Following ~~████~~ remand from the Ninth Circuit, Rodriguez filed amended pleadings in 2023 (Docs. 196, 197). DPHHS moved for summary judgment (Doc. 198), arguing that (1) no ICWA violation occurred; (2) the action was barred by res judicata and collateral estoppel; and (3) the controversy was moot because J.R. had reached 18 and B.R. would soon do so (Doc. 199 at 5–16). Rodriguez opposed with a detailed 39-page response (Doc. 226) supported by exhibits—including sealed state-court and tribal records (Doc. 227-1) and hearing transcripts (Doc. 152-7)—asserting that the 2012 removal violated §§ 1911, 1912(a), *(b)* (c), (d), and (e) *and (f)* because (1) *and wardship* emergency custody was obtained without notice to the Tribe or qualified expert testimony, (2) the children's domicile on the Rocky Boy's Reservation deprived the state court of jurisdiction, and (3) the Department failed to make "active efforts" prior to termination.

C. District Court's Decision and Final Judgment

On December 23, 2024, the District Court granted summary judgment for DPHHS (Doc. 231 at 8-9). It concluded that:

1. The 2012 emergency removal and later proceedings did not violate ICWA, because DPHHS had provided "sufficient notice" and "active efforts." *And that The Chippewa Cree Indian Tribe and tribal court did not have exclusive subject matter jurisdiction over J.R. and B.R.*

2. Rodriguez's claims were barred by res judicata arising from the state-court judgment affirmed in In re B.R. & J.R. (2016 MT 234N).

3. The controversy was moot, as both children had reached or were approaching adulthood. Judgment was entered June 12, 2025 (Doc. 251), dismissing all claims with prejudice.

I) The District Court (Magistrate John Johnston) was biased, erred, and abused its discretion when it deliberately failed to order that a request for Waiver of Service of Summons be delivered and served to all named Defendants in Rodriguez's First Amended Complaint (D. Ct. Doc. 42), in his Order (D. Ct. Doc. 45), and then denying Rodriguez's Motion to Compel Service of the Remaining Unserved Defendants (D. Ct. Doc. 46), in his Order (D. Ct. Doc. 47), thereby defending and immunizing the Defendants from suit and from being held legally liable and accountable for their actions.

Rodriguez filed his First Amended Complaint on remand from the Ninth Circuit, naming forty-four defendants and asserting federal ICWA, § 1983, and constitutional claims. (D. Ct. Doc. 42.) After screening under 28 U.S.C. § 1915, Magistrate Judge Johnston issued an Order directing the Clerk to request waiver of service from only thirteen DPHHS-related defendants. (D. Ct. Doc. 45 at 7–8.) The Order expressly declined to order service on the remaining named defendants, stating that dismissal of much of the Amended Complaint "appears likely" and that briefing would be helpful before proceeding further. Id.

Federal Rule of Civil Procedure 4(c)(3) provides that, at the plaintiff's request, the court must order service by the United States Marshal if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915. Section 1915(d) likewise requires officers of the court to issue and serve all process in such cases. Once an indigent litigant properly requests service, the responsibility shifts to the court and the Marshal. See Boudette v. Barnette, 923 F.2d 754, 757 (9th Cir. 1991); Puett v. Blandford, 912 F.2d 270, 273 (9th Cir. 1990). The Rule does not authorize a court to withhold service based on a preliminary view of the likely merits of claims that have not been adjudicated.

*pg 8 of 49*

25-4432

Rodriguez complied with Rule 4(c)(3). In his Motion for Service, he specifically requested that the remaining defendants be served with the Amended Complaint and summons, or that waiver forms be issued. (D. Ct. Doc. 46.) Rather than ordering service as required, the Court denied the motion, reiterating that screening "appears likely" to result in dismissal of much of the complaint. (D. Ct. Doc. 47.) The denial was not based on a finding that the claims against those defendants had been dismissed under 28 U.S.C. §§ 1915(e)(2) or 1915A; instead, service was withheld prospectively.

Screening authority permits dismissal of claims that fail to state a claim or are legally frivolous. See 28 U.S.C. §§ 1915(e)(2), 1915A. It does not authorize selective non-service of defendants where the complaint has not been dismissed as to them. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). By refusing to order service, the Court prevented the unserved defendants from being brought within the jurisdiction of the court. Service of process is the act that establishes a court's authority over a defendant and triggers the obligation to respond. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).

The effect of withholding service was to shield those defendants from suit entirely. They were never required to answer, assert defenses, move to dismiss, or participate in discovery. They were not dismissed on the merits; they were simply never served. In practical and legal effect, the Court's refusal to order service functioned as a de facto dismissal of claims against those defendants without Rule 12 analysis and without adversarial testing. See Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982) (orders that effectively dispose of claims are reviewable as dismissals). The result was to immunize them from accountability through procedural non-service rather than adjudication.

The impropriety of this course is heightened by the procedural posture. The Ninth Circuit had previously vacated dismissal of Rodriguez's claims and remanded to allow amendment. (D. Ct. Doc. 45 at 2.) The purpose of remand was to permit development of the claims. Instead of facilitating that development, the Court narrowed the case at the threshold by limiting service to selected defendants and denying service as to the rest.

Where an indigent litigant invokes Rule 4(c)(3) and the complaint has not been dismissed as to particular defendants, the court's refusal to effect service forecloses adjudication against those parties and deprives the plaintiff of the opportunity to pursue claims authorized by federal law. An IFP litigant may not be penalized for service failures attributable to the court or its officers. See Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994). Magistrate Judge Johnston therefore erred and abused his discretion in limiting service to selected defendants and in denying Rodriguez's Motion to Compel Service of the remaining named defendants. The resulting failure to effect service materially prejudiced Rodriguez by foreclosing adjudication of claims against unserved parties and by insulating those defendants from accountability.

II) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it made the following determination and rulings in its Order Adopting In Part and Reversing In Part Magistrate Judge's (John Johnston) Findings and Recommendations (D. Ct. Doc. 95):

a) The District Court (Judge Brian Morris) erred and abused its discretion when it determined and Ordered Defendants Motion to Dismiss (D. Ct. Doc. 58 and 64) are GRANTED as to all claims against them except those arising under the Indian Child Welfare Act in its Order (D. Ct. Doc. 95):

(1). Even though the District Court (Judge Brian Morris) ruled that Rodriguez's Indian Child Welfare Act claims were timely and did not dismiss the ICWA claims brought in Federal Court pursuant to 25 U.S.C. § 1914, it erred and abused its discretion when it determined and ordered that the ICWA claims were subject to a Six-Month Statute of Limitations under State law rather than a Two-Year or longer Analogous Limitations Period, in his Order (D. Ct. Doc. 95). To give one parent of an Indian child, who voluntarily relinquishes his parental rights under 25 U.S.C. § 1913, a Two-Year statute of limitation to file an action in federal court to invalidate

pg 9 of 49

the state court judgment terminating his parental rights pursuant to 25 U.S.C. § 1914, and then to turn around and give a similarly situated parent of an Indian child, who does not voluntarily relinquish his parental rights, but instead legally fights to the bitter end to keep his family together and has his parental rights to his Indian children involuntarily terminated by the same state court less than the same two-year statute of limitations in which to file an action in federal court pursuant to the same 25 U.S.C. § 1914 to invalidate the wrongful and involuntary termination of his parental rights for violations of the Indian Child Welfare Act violates both Equal Protection and Due Process rights guaranteed by the U.S. Constitution.

**The District Court Erred by Applying a Six-Month State Statute of Limitations to ICWA § 1914 Claims Rather Than a Two-Year or Longer Federal Analogue**

The selection of a statute of limitations for a federal cause of action is a matter of federal law. Where Congress has created a federal remedy but has not supplied an express limitations period, federal courts may borrow the most closely analogous limitations period only if that borrowing is consistent with federal statutory policy and does not frustrate the remedial purpose of the federal enactment. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33–34 (1995). Borrowing may not be undertaken in a manner that "frustrates or interferes with the implementation of national policies." Id. at 34. Section 1914 contains no express statute of limitations, and Congress's omission is particularly significant in light of the statute's corrective design.

**A. Section 1914 Creates an Independent Federal Remedy Untethered to Short State Limitations Periods**

Section 1914 of ICWA authorizes "any parent from whose custody an Indian child was removed" to "petition any court of competent jurisdiction to invalidate" a state court action taken in violation of Sections 1911, 1912, or 1913. 25 U.S.C. § 1914. Congress included no express statute of limitations, reflecting its intent that federal courts serve as a corrective backstop against unlawful state proceedings that historically deprived Indian families of meaningful protection.

ICWA was enacted in response to documented systemic failures of state courts to protect Indian families and tribal sovereignty. 25 U.S.C. § 1901. The statute expressly declares that its purpose is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." 25 U.S.C. § 1902. The Supreme Court emphasized in *Mississippi Band of Choctaw Indians v. Holyfield* that ICWA establishes minimum federal standards governing state child custody proceedings and that its provisions must be interpreted as a matter of federal law to ensure nationwide uniformity. 490 U.S. 30, 36–37, 45–47 (1989). Section 1914's invalidation remedy is central to that federal structure and functions as the enforcement mechanism for those minimum federal standards.

In its February 23, 2022 order, the District Court acknowledged that Section 1914 contains no limitations period, yet it borrowed a six-month Montana statute (Mont. Code Ann. § 42-2-620) as the "most closely analogous" period. (D. Ct. Doc. 95.) While federal courts may borrow state limitations periods in the absence of congressional direction, they may do so only if the borrowed period is consistent with federal law and policy. A limitations period that materially frustrates the federal right or renders the remedy impractical cannot stand. *North Star Steel*, 515 U.S. at 34.

Here, the six-month bar does exactly that. It is extraordinarily short for a federal invalidation action challenging state termination proceedings that routinely involve multi-year litigation, appellate review, and certiorari practice. Indeed, the District Court itself relied on the completion of appellate review—including denial of certiorari—to determine accrual and timeliness. (D. Ct. Doc. 95.) A limitations framework that expires before appellate review can realistically conclude is incompatible with Section 1914's remedial purpose and the federal interests identified in *Holyfield*. The Ninth Circuit has recognized that Section 1914 creates an independent federal invalidation mechanism. In *Doe v. Mann*, the court confirmed that Section 1914 authorizes federal courts to review state child custody proceedings for compliance with ICWA's mandatory provisions. 415 F.3d 1038, 1046–47 (9th Cir. 2005). That review necessarily

*pg 10 o P49*

25-4432

requires examination of the underlying state trial record, including notice compliance, active efforts, and qualified expert testimony under Sections 1912(a), (d), (e), and (f). A six-month period that effectively forecloses meaningful access to those materials before the federal petition can be filed is incompatible with Congress's design.

## B. ICWA's Own Structure Supplies a More Appropriate Federal Analogue

A longer and more appropriate federal analogue exists within ICWA itself. Under 25 U.S.C. § 1913(d), Congress expressly granted parents two years to challenge the validity of voluntary consents to termination or adoption when ICWA's safeguards are violated. Like Section 1914, Section 1913(d) authorizes invalidation of state court actions that unlawfully sever parental rights. The District Court's decision to apply a six-month state period to Section 1914—while ICWA itself provides a two-year window for a closely related invalidation remedy—creates a structural incongruity within the statute. Both provisions address the invalidation of state court judgments terminating parental rights; both are designed to protect Indian families from unlawful separation. There is no textual or structural basis for concluding that Congress intended involuntary termination challenges to be subject to a drastically shorter federal filing window than voluntary consent challenges.

That incongruity produces an even more troubling result: it privileges parents who voluntarily relinquish their rights by granting them two years to seek federal invalidation, while penalizing parents who contest termination to preserve their families by compressing their federal filing window to six months. Nothing in ICWA's text, history, or purpose supports such an outcome. To the contrary, ICWA was enacted to protect Indian families from unjust and coercive removals—not to reward voluntary relinquishment while disadvantaging parents who lawfully resist termination. The Supreme Court has repeatedly recognized that parental rights are fundamental liberty interests protected by the Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). A limitations rule that burdens those who assert and defend that fundamental right more severely than those who relinquish it raises serious constitutional concerns.

## C. The Six-Month Borrowing Undermines Federal Uniformity and Violates Equal Protection and Due Process

The District Court's approach also undermines ICWA's core objective of federal uniformity. The Supreme Court made clear in *Holyfield* that ICWA concepts and enforcement are matters of federal law, not subject to divergent state definitions or procedural limitations. 490 U.S. at 45–47. Allowing each state to impose its own truncated limitations period on Section 1914 petitions produces precisely the inconsistency Congress sought to eliminate.

Moreover, the disparate treatment resulting from the six-month borrowing raises serious constitutional concerns. Two similarly situated Indian parents—each invoking Section 1914 to invalidate unlawful state termination proceedings—are treated differently based solely on whether the termination was voluntary or involuntary. Parents who fought to the bitter end to keep their families intact are afforded less time to seek federal relief than those who relinquished rights voluntarily. That distinction lacks any rational basis and implicates both Equal Protection and Due Process concerns, particularly where fundamental parental rights are at stake. See *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

## D. The Borrowed Limitations Period Cannot Be Reconciled with Section 1914's Corrective Function

Section 1914 was enacted precisely because state courts often failed to enforce ICWA's mandatory protections. Congress created a federal forum to ensure compliance with Sections 1911, 1912, and 1913. Allowing a short state limitations period to extinguish Section 1914 claims before meaningful federal review can occur defeats the statute's corrective function and insulates unlawful state conduct from accountability.

*pg 11 of 49*

25-4432

Federal courts may not adopt state procedural rules in a manner that nullifies a federal right. The Supreme Court has cautioned that borrowing doctrines must not "frustrate or interfere" with federal statutory objectives. *North Star Steel,* 515 U.S. at 34. The six-month limitation applied here materially restricts access to the federal invalidation remedy and cannot be reconciled with Section 1914's purpose.

Because the selection of an analogous limitations period is a question of law, this Court's review is de novo. Under that standard, the District Court's adoption of a six-month state statute as the governing limitations period for Section 1914 claims cannot be sustained.

**II (a)(2) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined and ordered the dismissal of Rodriguez's § 1983 claims with prejudice in its Order (D. Ct. Doc. 95) after improperly applying federal accrual and equitable tolling principals.**

Rodriguez's § 1983 claims did not accrue until May 15, 2017, when Certiorari was denied by the United States Supreme Court because the Younger Abstention Doctrine prohibited a federal court from interfering with an ongoing state court parental rights termination case, did not receive equitable tolling during the First Direct Appeal in the 9th Cir. Court of Appeals Cause No. 19-35000 (D.Ct. Docs. 28 and 32), and did not receive equitable tolling due to lack of access to legal material, as a Pro Se Inmate Litigant during the Covid-19 pandemic despite his every effort to be as diligent as possible. See arguments for accrual and equitable tolling in Rodriguez's Rule 60(b) Motion TO Set Aside Order Adopting Magistrate Judge's Findings and Recommendations, or in the alternative reconsideration pursuant to Rule 54(b) (D.Ct. Doc. 97), which was later denied in the District Court's Order (D. Ct. Doc. 104).

The District Court erred and abused its discretion when it dismissed Rodriguez's § 1983 claims with prejudice in its February 23, 2022 order (D. Ct. Doc. 95) after improperly applying federal accrual and equitable tolling principles. Accrual of a § 1983 claim is governed by federal law. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). A claim accrues when the plaintiff has a complete and present cause of action. Id. However, accrual presupposes that the plaintiff may lawfully invoke federal jurisdiction. Where federal jurisdiction is barred by abstention doctrine, the claim cannot be meaningfully brought.

Rodriguez's § 1983 claims did not accrue until May 15, 2017, when the United States Supreme Court denied certiorari in the underlying state termination proceedings. Until that date, federal adjudication of Rodriguez's constitutional claims was jurisdictionally barred by the Younger abstention doctrine, which prohibits federal courts from interfering with ongoing state parental-rights termination proceedings. *Younger v. Harris,* 401 U.S. 37 (1971). The Supreme Court extended Younger to civil proceedings implicating important state interests, including family law matters. *Moore v. Sims,* 442 U.S. 415, 423 (1979). The Ninth Circuit has repeatedly affirmed dismissal of § 1983 actions under Younger where the federal action would interfere with pending state custody proceedings. See *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,* 754 F.3d 754, 758–59 (9th Cir. 2014); *H.C. ex rel. Gordon v. Koppel,* 203 F.3d 610, 612–14 (9th Cir. 2000); *Quinn v. Kibbodeaux,* 837 F. App'x 500 (9th Cir. 2021).

As a matter of law, Rodriguez could not have brought his § 1983 claims earlier without having them dismissed as premature under Younger. Federal accrual principles require not only knowledge of injury, but the existence of a legally available forum. The District Court's failure to anchor accrual to the termination of state proceedings constitutes legal error.

The District Court further erred by refusing to apply equitable tolling. At the Rule 12 stage, dismissal based on statute of limitations is proper only when the running of the statute is apparent on the face of the complaint. *Von Saher v. Norton Simon Museum,* 592 F.3d 954, 969 (9th Cir. 2010). The Ninth Circuit has emphasized that where equitable tolling depends on facts outside the pleadings, dismissal under Rule 12(b)(6) is rarely appropriate. *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1207–08 (9th Cir. 1995). As long as the complaint, liberally construed, alleges facts showing potential applicability of tolling, dismissal should not be granted. *Cervantes v. City of San Diego,* 5 F.3d 1273, 1277 (9th Cir. 1993).

pg12oP49

25-4432

Rodriguez diligently pursued his claims throughout the relevant period. After the initial dismissal of his federal action, Rodriguez filed a timely appeal to the Ninth Circuit (D. Ct. Doc. 28). That appeal resulted in a vacatur and remand because the District Court had dismissed the case without allowing amendment and without finding futility. (D. Ct. Doc. 32.) The pendency of that appeal— and the District Court's own procedural error necessitating it—supports equitable tolling as a matter of law. A litigant actively pursuing relief in the appellate court is not sleeping on his rights. *Burnett v. N.Y. Cent. R.R.*, 380 U.S. 424, 429–30 (1965).

Equitable tolling is further warranted by the extraordinary circumstances Rodriguez faced as a pro se incarcerated litigant, compounded by the COVID-19 pandemic. The Ninth Circuit has held that a complete lack of access to legal files may constitute an extraordinary circumstance warranting equitable tolling. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027–28 (9th Cir. 2005). Temporary deprivation of legal materials during transfers may also justify tolling. *Lott v. Mueller*, 304 F.3d 918, 924–25 (9th Cir. 2002). Denial of access to legal files necessary to prepare a petition supports tolling where diligence is shown. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009). Rodriguez's filings document repeated transfers, lockdowns, and denial of access during the pandemic period. (D. Ct. Docs. 35–41.)

Federal courts borrowing state limitations periods must also borrow state tolling doctrines. *Hardin v. Straub*, 490 U.S. 536, 539 (1989). Montana law likewise recognizes tolling in circumstances involving legal disability or extraordinary impediment. The District Court did not meaningfully analyze these doctrines before dismissing with prejudice.

Rodriguez squarely raised these accrual and tolling arguments in his Rule 60(b) / Rule 54(b) motion to set aside or reconsider the District Court's dismissal order. (D. Ct. Doc. 97.) The District Court denied that motion. (D. Ct. Doc. 104.) Critically, however, the denial did not correct the underlying accrual or tolling errors. Instead, the court rejected reconsideration largely on procedural grounds, leaving intact a with-prejudice dismissal premised on an erroneous limitations analysis.

The harm from these errors is magnified by the with-prejudice nature of the dismissal. The District Court did not merely dismiss the § 1983 claims; it permanently foreclosed them without allowing amendment and without a developed factual record. At the pleading stage, all reasonable inferences must be drawn in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By misapplying accrual doctrine, refusing equitable tolling, and then dismissing with prejudice, the District Court prematurely extinguished Rodriguez's constitutional claims.

Because accrual and equitable tolling are legal questions, this Court's review is de novo. Under that standard, the District Court's dismissal of Rodriguez's § 1983 claims cannot be sustained. Rodriguez's claims either did not accrue until certiorari was denied, or, at minimum, were equitably tolled during the pendency of state proceedings, appellate review, the Ninth Circuit appeal, and extraordinary-pandemic-related barriers. The District Court's contrary conclusions constitute reversible error.

**b) The District Court (Judge Brian Morris) erred and abused its discretion when it determined/Ordered (D. Ct. Doc. 95) the dismissal with prejudice of the Remaining Claims in Rodriguez's First Amended Complaint (D. Ct. Doc. 42) Counts 32, 34, 35, 38, and 39:**

**1) The District Court (Judge Brian Morris) erred and abused its discretion when it dismissed with prejudice, in its Order (D. Ct. Doc. 95), Rodriguez's Due Process Claims brought under both the Fifth and Fourteenth Amendments, in his First Amended Complaint (D. Ct. Doc. 42), without leave to amend and without declaring amendment would be futile, even though this was the first time the due process claims had been raised.**

Rodriguez's First Amended Complaint expressly asserted Due Process violations under both the Fifth and Fourteenth Amendments arising from the removal of his Indian children, the conduct of the state termination proceedings, and the deprivation of his fundamental parental rights. (D. Ct. Doc. 42.) The Due Process counts alleged, inter alia, deprivation of notice, denial of meaningful opportunity to be heard, failure to provide qualified expert testimony under ICWA standards, and state action undertaken without

pg 13 of 49

constitutionally adequate procedural safeguards. (D. Ct. Doc. 42.) These Due Process claims were raised for the first time in the amended pleading filed following the Ninth Circuit's vacatur and remand. (D. Ct. Doc. 32.)

In its February 23, 2022 Order adopting in part and reversing in part the Magistrate Judge's Findings and Recommendations, the District Court dismissed those Due Process claims with prejudice. (D. Ct. Doc. 95) The Order states that Counts 32, 34, 35, 38, and 39 were dismissed "with prejudice." (D. Ct. Doc. 95) The Court did not provide leave to amend. It did not state that amendment would be futile. It did not identify any deficiency that could not be cured by additional factual allegations.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires. The Supreme Court held in Foman v. Davis that dismissal with prejudice is improper absent a showing of futility, undue prejudice, bad faith, or repeated failure to cure deficiencies. 371 U.S. 178, 182 (1962). The Ninth Circuit applies this rule strictly in pro se cases, holding that leave to amend must be granted unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).

The District Court made no such futility finding in Doc. 95. (D. Ct. Doc. 95.) The Order contains no analysis stating that amendment would be futile. It does not evaluate whether additional factual detail could cure perceived deficiencies. Instead, the claims were terminated outright at the Rule 12 stage.

This failure is particularly significant given the procedural posture. The Ninth Circuit vacated the earlier dismissal of Rodriguez's complaint because the District Court had dismissed without allowing amendment and without finding futility. (D. Ct. Doc. 32.) The mandate required the District Court to permit amendment unless amendment would be futile. The Due Process claims in Doc. 42 were the product of that remand. Dismissing them with prejudice without a futility determination directly contradicts both Rule 15 and the Ninth Circuit's mandate.

Rodriguez explicitly preserved this issue. In his Rule 60(b)/Rule 54(b) motion, he argued that dismissal with prejudice without leave to amend violated Rule 15 and requested the opportunity to cure any deficiencies. (D. Ct. Doc. 97.) The District Court denied that motion. (D. Ct. Doc. 104.) The denial did not address the absence of a futility finding; it left intact a with-prejudice dismissal entered without compliance with Rule 15.

The error is magnified by the nature of the claims. The Due Process allegations concern termination of parental rights — interests the Supreme Court has recognized as "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758–59 (1982). Parental rights are fundamental liberty interests protected by the Constitution. Troxel v. Granville, 530 U.S. 57, 65 (2000). When such claims are raised, dismissal with prejudice at the pleading stage requires heightened care.

The Court also resolved these claims in a procedural environment shaped by earlier service restrictions. (D. Ct. Docs. 45–47.) Several defendants had not yet been served at the time of dismissal. (D. Ct. Docs. 55, 57, 69.) Discovery had not occurred. The factual record was undeveloped. Immunity determinations and due process adequacy were resolved solely on pleadings. At the Rule 12 stage, all reasonable inferences must be drawn in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court's dismissal did not adhere to that standard.

Because this was the first assertion of the Due Process claims following remand, because Rodriguez requested leave to amend if deficiencies were found (D. Ct. Doc. 97), because the Court made no futility finding (D. Ct. Doc. 95), and because the Ninth Circuit's mandate required liberal amendment (D. Ct. Doc. 32), the with-prejudice dismissal constitutes an abuse of discretion.

Judge Brian Morris therefore erred in dismissing Rodriguez's Due Process claims with prejudice without granting leave to amend and without declaring amendment would be futile.

25-4432

2) The District Court (Judge Brian Morris) erred and abused its discretion when it dismissed with prejudice, in its Order (D. Ct. Doc. 95), Rodriguez's Equal Protection Claims brought under the Fourteenth Amendment, in his First Amended Complaint (D. Ct. Doc. 42), without leave to amend and without declaring amendment would be futile, even though this was the first time the equal protection claim had been raised.

Rodriguez's First Amended Complaint expressly alleged that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating him differently from similarly situated parents in state termination proceedings and by applying standards and procedures inconsistently in a manner that burdened his fundamental parental rights. (D. Ct. Doc. 42.) These Equal Protection claims were newly asserted following the Ninth Circuit's vacatur and remand. (D. Ct. Doc. 32.)

In its February 23, 2022 Order, the District Court dismissed those Equal Protection claims with prejudice. (D. Ct. Doc. 95.) The Court did not grant leave to amend. It did not state that amendment would be futile. It did not identify any deficiency that could not be cured by additional factual allegations.

The Equal Protection Clause commands that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It prohibits irrational discrimination and differential treatment affecting fundamental rights. Where state action burdens fundamental parental rights, courts apply heightened scrutiny. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Rodriguez's allegations, taken as true at the Rule 12 stage, asserted disparate procedural treatment in termination proceedings affecting those fundamental rights.

At the pleading stage, dismissal is appropriate only where it is clear that no amendment could cure the deficiency. Rule 15(a)(2) requires that leave to amend be freely granted when justice so requires. The Supreme Court in *Foman v. Davis* held that dismissal with prejudice is improper absent a showing of futility, undue prejudice, bad faith, or repeated failure to cure deficiencies. 371 U.S. 178, 182 (1962). The Ninth Circuit has held that pro se litigants must be given leave to amend unless it is absolutely clear the complaint's deficiencies cannot be cured. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

The District Court's Order contains no finding that amendment of the Equal Protection claims would be futile. (D. Ct. Doc. 95.) It does not analyze whether additional allegations identifying similarly situated comparators, clarifying discriminatory treatment, or elaborating the procedural distinctions could state a viable claim. It simply terminates the claim with prejudice.

The error is compounded by the mandate from the Ninth Circuit. The appellate court vacated the earlier dismissal precisely because Rodriguez had not been permitted to amend absent a finding of futility. (D. Ct. Doc. 32.) The Equal Protection claim was raised for the first time in the amended pleading authorized by that remand. Dismissing it with prejudice without a futility determination contradicts both Rule 15 and the mandate rule.

Rodriguez preserved this issue in his Rule 60(b) / Rule 54(b) motion, arguing that dismissal with prejudice without leave to amend violated Rule 15 and the Ninth Circuit's directive. (D. Ct. Doc. 97.) The District Court denied reconsideration. (D. Ct. Doc. 104.) The denial did not address the absence of a futility finding, leaving intact a with-prejudice dismissal unsupported by the required analysis.

The procedural context further underscores the impropriety of the dismissal. The case had not progressed beyond the pleading stage. Several defendants had not yet been served due to earlier service limitations. (D. Ct. Docs. 45–47; 55, 57, 69.) Discovery had not occurred. Equal Protection claims often require factual development concerning similarly situated individuals, differential treatment, and state policies. Resolving such claims at the Rule 12 stage without permitting amendment and factual clarification runs counter to Ninth Circuit precedent.

25-4432

Moreover, the Equal Protection claim intersects directly with the ICWA statutory structure addressed in subsection II(a)(1). As previously argued, the District Court's application of a six-month state limitations period to Section 1914 claims while ICWA itself provides a two-year period for similar invalidation under Section 1913(d) creates disparate treatment among Indian parents invoking federal remedies. (D. Ct. Doc. 95.) That statutory disparity forms part of the Equal Protection argument. The District Court's dismissal foreclosed further development of that theory without permitting amendment to clarify the constitutional basis.

Because the Equal Protection claim was newly raised, because Rodriguez requested leave to amend if deficiencies were found (D. Ct. Doc. 97), because the District Court made no futility finding (D. Ct. Doc. 95), and because the Ninth Circuit's remand required liberal amendment (D. Ct. Doc. 32), the with-prejudice dismissal constitutes an abuse of discretion.

Judge Brian Morris therefore erred and abused his discretion in dismissing Rodriguez's Equal Protection claims with prejudice without granting leave to amend and without declaring amendment would be futile.

**3) The District Court (Judge Brian Morris) erred and abused its discretion when it dismissed with prejudice, in its Order (D. Ct. Doc. 95), Rodriguez's Claim in Count 32 of his First Amended Complaint (D. Ct. Doc. 42), for failure to state a federal claim, without leave to amend and without declaring that amendment would be futile, even though this was the first time Count 32 had been raised.**

Count 32 of Rodriguez's First Amended Complaint asserted a distinct federal claim arising from the same course of conduct underlying the removal and termination proceedings involving his Indian children. (D. Ct. Doc. 42.) Count 32 was not present in the original complaint; it was raised for the first time in the amended pleading filed following the Ninth Circuit's vacatur and remand. (D. Ct. Doc. 32.)

In its February 23, 2022 Order, the District Court dismissed Count 32 with prejudice for failure to state a federal claim. (D. Ct. Doc. 95.) The Court did not grant leave to amend. It did not state that amendment would be futile. It did not analyze whether additional factual allegations could cure the perceived deficiency. Instead, it terminated the claim at the Rule 12 stage.

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper only where the complaint fails to state a claim upon which relief can be granted. At this stage, all well-pleaded factual allegations must be accepted as true and all reasonable inferences drawn in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal based on legal insufficiency must rest on the absence of a viable theory under any set of facts consistent with the allegations.

The Supreme Court in *Foman v. Davis* held that dismissal with prejudice is improper absent a finding of futility. 371 U.S. 178, 182 (1962). The Ninth Circuit has emphasized that pro se plaintiffs must be given leave to amend unless it is absolutely clear that the complaint's deficiencies cannot be cured. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). This rule applies with special force where the claim is newly asserted and no prior amendment opportunity has been afforded.

Here, Count 32 was asserted for the first time in the First Amended Complaint authorized by the Ninth Circuit's remand. (D. Ct. Doc. 32.) The appellate court vacated the earlier dismissal precisely because amendment had not been permitted absent a finding of futility. The District Court's dismissal of Count 32 with prejudice — without a futility determination — contravenes both Rule 15 and the mandate rule.

Rodriguez specifically preserved the right to amend if the Court identified pleading deficiencies. In his Rule 60(b) / Rule 54(b) motion, Rodriguez argued that dismissal with prejudice without leave to amend violated Rule 15 and requested the opportunity to cure any deficiencies. (D. Ct. Doc. 97.) The District Court denied reconsideration. (D. Ct. Doc. 104.) The denial did not address the absence of a futility finding or explain why amendment would be legally impossible.

Moreover, the procedural environment in which Count 32 was dismissed was incomplete. As reflected in Docs. 45–47, the Court had previously limited service to a subset of defendants. Several defendants were not served at the time of dismissal. (D. Ct.

*pg 16 of 49*

25-4432

Docs. 55, 57, 69.) Discovery had not commenced. Factual development had not occurred. Count 32, like the Due Process and Equal Protection claims, involved allegations intertwined with ICWA compliance, agency conduct, and state procedural irregularities — matters often requiring factual clarification and documentary support.

The Ninth Circuit has cautioned that dismissal with prejudice at the pleading stage is a "harsh remedy" that should be employed only where no amendment could cure the defect. Where the complaint suggests a potentially viable theory but lacks detail, leave to amend must be granted. The District Court's Order does not explain why Count 32 could not be amended to state a viable federal claim.

The prejudice resulting from the with-prejudice dismissal is substantial. By permanently foreclosing Count 32 without permitting amendment, the Court prevented Rodriguez from clarifying the factual and legal basis of that claim and from developing it through discovery. This result is particularly improper given that Count 32 was raised in good faith following remand and had not previously been adjudicated on the merits.

Because Count 32 was newly asserted, because Rodriguez requested leave to amend if deficiencies were found (D. Ct. Doc. 97), because the District Court made no finding that amendment would be futile (D. Ct. Doc. 95), and because the Ninth Circuit's remand required liberal amendment absent futility (D. Ct. Doc. 32), the dismissal with prejudice constitutes an abuse of discretion.

Judge Brian Morris therefore erred in dismissing Count 32 with prejudice without granting leave to amend and without declaring that amendment would be futile.

II(c) The District Court (Judge Brian Morris) erred and abused its discretion when it denied Rodriguez's Motions for Entry of Default Judgment (D. Ct. Docs. 79, 83, and 87), and then set aside the Clerk's Entries of Default Against Defendants Judith Hartelius, Anna Fisher, and Amanda Fortenberry (D. Ct. Docs. 78, 82, and 86), sua sponte without any legal analysis, reasoning, or good cause in its Order (D. Ct. Doc. 95), even though Rodriguez had fully complied with Rule 55, and Defendants despite being properly served with the Summons and First Amended Complaint (D. Ct. Docs. 55, 57, and 69) failed to appear, did not file or serve an answer, or take any other action as may be permitted by law to defend themselves from suit.

The record establishes that Judith Hartelius, Anna Fisher, and Amanda Fortenberry were properly served with the Summons and First Amended Complaint. (D. Ct. Docs. 55, 57, 69.) Each of those defendants failed to appear, file an answer, or otherwise defend within the time prescribed by Rule 12(a). As a result, Rodriguez requested entry of default. The Clerk entered default against each of these defendants pursuant to Rule 55(a). (D. Ct. Docs. 78, 82, 86.)

Federal Rule of Civil Procedure 55(a) provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, "the clerk must enter the party's default." The entry of default is a ministerial act when service and nonappearance are established. The Ninth Circuit has held that once failure to defend is shown, entry of default under Rule 55(a) is mandatory. *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

After entry of default, Rodriguez filed motions for default judgment under Rule 55(b). (D. Ct. Docs. 79, 83, 87.) Those motions placed before the Court the question whether default judgment should be entered, applying the well-established factors articulated in *Eitel v. McCool*, including the merits of the claim, sufficiency of the complaint, prejudice to the plaintiff, and the policy favoring decisions on the merits. 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Instead of applying Rule 55(b) and the *Eitel* framework, the District Court sua sponte set aside the Clerk's entries of default and denied the motions for default judgment in Doc. 95. (D. Ct. Doc. 95.) The Order contains no Rule 55(c) analysis. It identifies no "good cause." It does not apply the Ninth Circuit's three-factor test governing relief from entry of default: (1) whether the defendant engaged in culpable conduct leading to default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside default

*pg 17 of 49*

would prejudice the plaintiff. *United States v. Signed Personal Check No. 730*, 615 F.3d 1085, 1091 (9th Cir. 2010); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

Critically, the defaulted defendants did not move to set aside the defaults. They did not appear and establish excusable neglect. They did not proffer a meritorious defense. They did not demonstrate lack of prejudice. Relief from default under Rule 55(c) requires a showing by the defaulting party. Here, the District Court granted relief sua sponte without any record-based showing satisfying the Rule 55(c) standard.

The Ninth Circuit has made clear that although Rule 55(c) is applied liberally, courts may not disregard its requirements. Relief from default is not automatic; it requires analysis anchored in the governing factors. *Franchise Holding II*, 375 F.3d at 925–26. By setting aside the defaults without applying those factors, the District Court departed from the controlling framework.

The denial of default judgment is likewise unsupported by analysis. Under *Eitel*, the Court must evaluate prejudice to the plaintiff, the merits of the claim, the sufficiency of the complaint, the amount at stake, the possibility of a dispute concerning material facts, whether default was due to excusable neglect, and the policy favoring decisions on the merits. 782 F.2d at 1471–72. Doc. 95 does not apply the *Eitel* factors. It does not explain why default judgment was inappropriate. It simply vacates the entries of default and denies the motions.

The prejudice to Rodriguez is substantial. The Clerk's entries of default reflected the procedural consequence of Defendants' failure to respond after proper service. (D. Ct. Docs. 78, 82, 86.) By vacating those defaults sua sponte and denying default judgment without analysis, the Court removed the only mechanism by which non-appearing defendants could be held accountable for their failure to defend. Default procedure exists to ensure that defendants cannot ignore properly served complaints without consequence. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988).

Moreover, this intervention occurred in a case where service had already been restricted to a subset of defendants. (D. Ct. Docs. 45–47.) The Court first limited service, then vacated defaults against the few defendants who had been served but failed to appear. The combined effect was to insulate defendants from suit through procedural intervention rather than through adjudication on the merits.

Because the District Court set aside the Clerk's entries of default and denied default judgment without applying Rule 55(c)'s good-cause standard, without applying the Ninth Circuit's controlling factors, and without any motion or showing by the defaulting defendants, the ruling constitutes an abuse of discretion and reversible error.

II(d) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it sua sponte dismissed all claims against all the Defendants in its Order (D. Ct. Doc. 95), that the Magistrate Judge John Johnston had previously deliberately failed to have served with Rodriguez's First Amended Complaint (D. Ct. Doc. 42), in his Order (D. Ct. Doc. 45), and then denying Rodriguez's Motion (D. Ct. Doc. 46) to compel service of the remaining unserved defendants in Order (D. Ct. Doc. 47), without Defendant ever being served or making an appearance, thereby defending and immunizing the Defendant from suit and assisting to prevent them from being held legally liable and accountable for their actions, and thus severely prejudicing Rodriguez.

Rodriguez filed his First Amended Complaint naming numerous defendants and asserting federal claims under ICWA, 42 U.S.C. § 1983, and the Constitution. (D. Ct. Doc. 42.) After screening, Magistrate Judge Johnston directed service on only a limited group of defendants and declined to authorize service on the remaining named defendants. (D. Ct. Doc. 45 at 7–8.) Rodriguez moved to compel service on those unserved defendants. (D. Ct. Doc. 46.) The motion was denied. (D. Ct. Doc. 47.)

The Federal Rules do not permit selective withholding of service once claims survive screening. Federal Rule of Civil Procedure 4(c)(3) provides that when a plaintiff proceeds in forma pauperis, the court must order service by the United States Marshal. Likewise,

*pg 18 of 49*

25-4432

28 U.S.C. § 1915(d) directs that officers of the court shall issue and serve all process in such cases. The Ninth Circuit has held that an incarcerated litigant proceeding in forma pauperis is entitled to rely on the court and the Marshal to effect service, and may not be penalized for failure of service attributable to the court's own decisions. *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990). Where service is not accomplished through no fault of the plaintiff, dismissal of claims against those defendants constitutes reversible error. *Walker v. Sumner*, 14 F.3d 1415, 1421–22 (9th Cir. 1994).

Despite denying service, the District Court later dismissed the claims against those same unserved defendants in its February 23, 2022 Order. (D. Ct. Doc. 95.) Those defendants were never served, never appeared, and never filed any responsive pleading. They were never brought within the jurisdiction of the court through formal service of process.

Service of process is the mechanism by which a court acquires authority over a defendant and triggers that defendant's obligation to respond. The Supreme Court has made clear that a defendant's duty to engage in litigation arises only upon formal service of process. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999). When the court itself prevents service, it cannot then treat the absence of participation by those defendants as grounds for dismissal of the claims against them.

The procedural sequence here is critical. First, the court restricted service to a subset of defendants. (D. Ct. Doc. 45.) Second, it denied Rodriguez's motion to compel service of the remaining defendants. (D. Ct. Doc. 47.) Third, it dismissed the claims against those same unserved defendants in Doc. 95. This sequence insulated those defendants from ever being brought before the court and prevented adversarial development of the claims.

The Ninth Circuit has cautioned that dismissal of claims against unserved defendants is improper where the failure of service is attributable to the court's own refusal to order service. *Puett*, 912 F.2d at 275; *Walker*, 14 F.3d at 1421–22. Here, Rodriguez did not fail to provide identifying information. He did not refuse to cooperate with service requirements. Instead, the court declined to authorize service while simultaneously permitting dispositive motion practice by the served defendants.

The prejudice to Rodriguez is substantial. By dismissing claims against defendants who were never served, the District Court foreclosed adjudication of those claims on the merits. Rodriguez was deprived of the opportunity to obtain discovery from those defendants, to test their conduct through adversarial process, and to establish liability under ICWA and § 1983. The dismissal operated not as a merits adjudication following adversarial litigation, but as a procedural shield arising from the court's own service restrictions.

This error also intersects with the Ninth Circuit's earlier remand. (D. Ct. Doc. 32.) The appellate court vacated the prior dismissal and directed that Rodriguez be permitted to amend. The remand contemplated development of the claims through proper procedure. By limiting service and then dismissing claims against unserved defendants, the District Court curtailed the very development the remand authorized.

The Federal Rules contemplate two options once screening is complete: either dismiss claims under the screening statutes with proper analysis, or order service so defendants may appear and defend. The Court chose a third path—blocking service and then terminating claims. That approach deviates from Rule 4(c)(3), § 1915(d), and controlling Ninth Circuit precedent.

Because the District Court dismissed claims against defendants who had never been served after denying Rodriguez's request to compel service, the ruling constitutes an abuse of discretion. It prevented those defendants from being brought before the court and functionally immunized them from liability without adjudication on the merits.

**III) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it deliberately failed to comply with Fed. R. Civ. P. 16(b)(2) and failed to advance the case by not issuing the Scheduling Order within 90 days of service of the Defendants, in order to assist the Defendants in their defense against Rodriguez's ICWA, § 1983, and Constitutional Claims. Defendants were served on 5/14/2021 (D. Ct. Doc. 48), with Rodriguez's First Amended Complaint, and the Scheduling Order (D. Ct.**

25-4432

Doc. 189) was not issued until almost Four Years later on 9/25/2024, despite the fact that on 12/11/2020 Rodriguez filed his Motion for Scheduling Order (D. Ct. Doc. 44), which Magistrate Judge John Johnston denied in his Order (D. Ct. Doc. 45).

Rule 16(b)(2) requires that the district judge issue a scheduling order "as soon as practicable," and in any event within 90 days after service of a defendant or 60 days after appearance. Fed. R. Civ. P. 16(b)(2). The language is mandatory. It reflects the Federal Rules' core directive that cases proceed in a just, speedy, and orderly manner. See Fed. R. Civ. P. 1.

Waivers of service were executed on May 14, 2021. (D. Ct. Doc. 48.) Under Rule 16(b)(2), a scheduling order should have issued no later than August 2021. Instead, no scheduling order was entered until September 25, 2024. (D. Ct. Doc. 189.) The nearly four-year lapse between service and issuance of a scheduling order is not a minor administrative delay; it is a suspension of formal case management.

The December 11, 2020 Motion for Scheduling Order (D. Ct. Doc. 44) and its denial in Doc. 45 confirm that the issue of case progression was squarely before the court well before service was completed. Once service was effected, Rule 16(b)(2) governed the timeline. No order explains why the Rule's mandatory timeframe was not observed.

The Ninth Circuit has emphasized that Rule 16 is intended to ensure the orderly progression of litigation and that adherence to scheduling requirements is central to case management. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992). Although district courts possess broad discretion in managing their dockets, that discretion must be exercised within the framework of the Federal Rules. Id. A delay of nearly four years in issuing the foundational case management order required by Rule 16(b)(2) falls outside the contemplated exercise of that discretion absent articulated justification.

The practical consequence of the absence of a scheduling order was the suspension of discovery. Local Rule 26.1(d), referenced in Doc. 45, prohibits discovery before issuance of a scheduling order. (D. Ct. Doc. 45 at 8.) Without a scheduling order, Rodriguez could not initiate depositions, serve formal written discovery under the structured timeline contemplated by the Rules, or compel compliance. The case remained procedurally static while claims alleging violations of federal statutory and constitutional rights awaited development.

When the Scheduling Order finally issued in September 2024, dispositive motion practice followed almost immediately. Defendants moved for summary judgment in October 2024. (D. Ct. Doc. 198.) The discovery window that should have followed a timely Rule 16 order was instead compressed into a narrow period that was subsequently stayed. The delayed entry of the scheduling order therefore had direct consequences for Rodriguez's ability to develop the record before dispositive rulings.

Rule 16(b)(2) is not aspirational. Its purpose is to structure litigation and prevent precisely the type of stagnation reflected in this record. The failure to issue a scheduling order within the timeframe mandated by the Rule, followed by entry of dispositive rulings without the benefit of a fully developed record, constitutes an abuse of discretion. Judge Brian Morris therefore erred in failing to comply with Rule 16(b)(2) and in permitting the case to remain without formal case management for nearly four years after service of process.

Rule 16(b)(2) establishes a mandatory timeline for entry of a scheduling order. When that timeline is not observed and no justification appears in the record, the resulting delay must be evaluated in light of its effect on the orderly progression of the case. Judge Brian Morris therefore erred in failing to comply with Rule 16(b)(2) by not issuing a scheduling order within the prescribed timeframe and then proceeding to dispositive rulings without the benefit of a fully developed record, constituting an abuse of discretion.

Rule 16(b)(2) establishes a mandatory timeline for entry of a scheduling order. When that timeline is not observed and no justification appears in the record, the resulting delay must be evaluated in light of its effect on the orderly progression of the case.

pg 20 of 49

Judge Brian Morris therefore erred in failing to comply with Rule 16(b)(2) by not issuing a scheduling order within the prescribed timeframe and then proceeding to dispositive rulings without the benefit of a fully developed record, constituting an abuse of discretion. The prejudice was compounded when Judge Morris later relied on the passage of time, time resulting from his own deliberate and self-imposed four year delay, to assist Defendants in arguing that Rodriguez's ICWA claims were moot. A district judge may not disregard the mandatory case management requirements of Rule 16, allow a federal action to stagnate for years, and then invoke the consequences of that delay to extinguish a federal statutory remedy under Section 1914.

IV) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it Sua Sponte intervened between Rodriguez and the Clerk's Office, and directed the Clerk's Office not to enter Rodriguez's Requests for Entry of Default. against Defendants on multiple occasions in its Orders (D. Ct. Does. 129 and 163), even though Rodriguez had fully complied with Rule 55, thereby shielding defending the Defendants, which severely prejudiced Rodriguez:

a) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it Sua Sponte intervened between Rodriguez and the Clerk's Office and directed the Clerk's Office not to enter Rodriguez's Requests for Entry of Default against Defendants Amanda Hope Fortenberry (D. Ct. Docs. 126 and 161), Judith Hartelius (D. Ct. Docs. 127 and 162), and Anna Fisher (D. Ct. Docs. 128 and 160), on multiple occasions in its Orders (D. Ct. Docs. 129 and 163), even though Rodriguez had fully complied with Fed. R. Civ. P. 55, and Defendants, despite being properly served with the Summons and First Amended Complaint (D. Ct. Docs. 55, 57, and 69), failed to appear, file or serve an answer, or otherwise defend, thereby shielding and defending the Defendants and severely prejudicing Rodriguez.

The record establishes proper service on the three individual defendants. The U.S. Marshal personally served Judith Hartelius on August 5, 2021. (D. Ct. Doc. 55 at 3.) Anna Fisher was served on August 11, 2021. (D. Ct. Doc. 57.) Amanda Hope Fortenberry was served on September 4, 2021. (D. Ct. Doc. 69.) Each proof of service reflects execution of the summons and complaint by the U.S. Marshal. The time for answering under Rule 12(a) expired without appearance, motion, or answer by any of these defendants.

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend... the clerk must enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added). In *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, the Ninth Circuit held that once a defendant has been properly served and fails to plead or otherwise defend, the clerk's entry of default under Rule 55(a) is not discretionary. 375 F.3d 922, 926 (9th Cir. 2004).

Rodriguez filed Requests for Entry of Default against Fortenberry, Hartelius, and Fisher on July 28, 2023. (D. Ct. Docs. 126, 127, 128.) Each request was accompanied by declarations establishing service and the defendants' failure to plead. The Clerk did not enter default. Instead, Judge Morris issued an Order directing the Clerk "to not enter default" and denying the requests. (D. Ct. Doc. 129.)

The July 28, 2023 Order relied on a prior February 23, 2022 Order (Doc. 95) to justify denial. (Doc. 129.) However, Rule 55(a) does not authorize denial of default based on earlier screening determinations where the complaint had not been dismissed as to these defendants and service had been properly executed. The function of Rule 55(a) is procedural: it addresses failure to plead or defend. It does not permit judicial preemption of default where the rule's requirements are satisfied.

The intervention was repeated. On August 2, 2024, Rodriguez again sought entry of default against the same defendants. (D. Ct. Docs. 158–162.) Judge Morris again directed the Clerk not to enter default and denied the requests. (D. Ct. Doc. 163.) The Order acknowledges that certain defendants had appeared and moved to dismiss (Docs. 58, 64), but reaffirms that default was "not appropriate" as to Fortenberry, Hartelius, and Fisher based on prior orders.

This repeated sua sponte intervention exceeded the proper role of the Court at the Rule 55(a) stage. By preventing entry of default despite proper service and nonappearance, the Court denied the procedural consequence mandated by Rule 55(a). In *Direct*

25-4432

*Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.,* the Ninth Circuit explained that default procedure exists to ensure that defendants who ignore properly served complaints cannot indefinitely avoid adjudication. 840 F.2d 685, 689 (9th Cir. 1988). By directing the Clerk not to enter default, the Court removed that mechanism and shielded non-appearing defendants from accountability without a merits determination.

Magistrate Judge Johnston therefore erred and abused his discretion in limiting service to selected defendants and in denying Rodriguez's Motion to Compel Service of the remaining named defendants. The resulting failure to effect service materially prejudiced Rodriguez by foreclosing adjudication of claims against unserved parties and by insulating those defendants from accountability.

b) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it sua sponte intervened between Rodriguez and the Clerk's Office and directed the Clerk's Office not to enter Rodriguez's Requests for Entry of Default (D. Ct. Docs. 158 and 159) against DPHHS-DFS Defendants and Defendant Mangan in its Order (D. Ct. Doc. 163), even though Rodriguez had fully complied with Fed. R. Civ. P. 55, and Defendants had failed to file an answer to Rodriguez's First Amended Complaint (D. Ct. Doc. 42) within the 14-day time limit allowed by Fed. R. Civ. P. 12 after their Motions to Dismiss (D. Ct. Docs. 58, 59, 64, and 65) were denied and disposed of in the Court's Order (D. Ct. Doc. 95), as required by law. Nothing of substance was filed for almost a year following the Court's Order (D. Ct. Doc. 95) that would have prevented the Entries of Default against Defendants.

Federal Rule of Civil Procedure 12(a)(4)(A) provides that when a court denies a motion under Rule 12, "the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A). The DPHHS-DFS Defendants and Defendant Lisa Anderson Mangan filed motions to dismiss under Rule 12 (D. Ct. Docs. 58, 59, 64, and 65). Those motions were denied and disposed of in the Court's February 23, 2022 Order. (D. Ct. Doc. 95.) Under Rule 12(a)(4)(A), Defendants were required to file an answer within fourteen days of that ruling.

The record reflects that no answer was filed within the fourteen-day period mandated by Rule 12(a)(4)(A). Nor was any motion for extension, stipulation, or other responsive pleading filed that would suspend the obligation to answer. The Federal Rules do not permit a defendant to remain silent following denial of a motion to dismiss. Once the motion is denied, the duty to answer is automatic.

Rule 55(a) provides that when a party against whom affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, "the clerk must enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added). The Ninth Circuit has held that once failure to defend is established, entry of default under Rule 55(a) is mandatory. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.,* 375 F.3d 922, 926 (9th Cir. 2004). Rodriguez filed Requests for Entry of Default (D. Ct. Docs. 158, 159) establishing the Rule 12 denial and expiration of the answer deadline.

Instead of permitting the Clerk to perform the ministerial act required by Rule 55(a), the Court sua sponte directed the Clerk not to enter default in its Order (D. Ct. Doc. 163). The Federal Rules establish a mandatory progression: once a Rule 12 motion is denied, an answer must be filed within fourteen days; if no answer is filed, Rule 55(a) requires entry of default upon proper request. The Rules provide mechanisms for relief from default under Rule 55(c) or Rule 60(b), but those provisions presuppose that default has first been entered. By directing the Clerk not to enter default at all, the Court bypassed the structure of the Rules.

The delay following Doc. 95 is significant. For nearly a year after denial of the Rule 12 motions, no answer was filed and no substantive defense was asserted that would satisfy Rule 12(a)(4)(A). The absence of a responsive pleading during that period triggered Rule 55(a). By preventing entry of default notwithstanding that failure, the Court insulated Defendants from the procedural consequences mandated by the Federal Rules.

pg 22 of 49

25-4432

Judge Brian Morris therefore erred and abused his discretion in directing the Clerk not to enter default against the DPHHS-DFS Defendants and Defendant Mangan after the Rule 12 motions were denied and the time to answer expired. The Orders in Doc. 163 improperly suspended the operation of Rules 12(a)(4)(A) and 55(a) and materially prejudiced Rodriguez by denying him the procedural remedy expressly provided by the Federal Rules.

V) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it denied Rodriguez's Motion (D. Ct. Doc. 137) to Transmit the State of Montana Eighth Judicial District Court Record, Under Seal, to the U.S. District Court for Cause No. ADN-12-150 and ADN-12-151, in its Order (D. Ct. Doc. 143) after it had granted Rodriguez's Motion (D. Ct. Doc. 136) to transmit the Montana Supreme Court record for Cause No. DA 15-0512, Under Seal, to the U.S. District Court, because the State of Montana Eighth Judicial District Court Record was critical to Rodriguez proving the facts of his ICWA, § 1983, and Constitutional Claims in his First Amended Complaint (D. Ct. Doc. 42), and for effectively defending against the Defendants' Motion for Summary Judgment (D. Ct. Docs. 198, 199, and 200).

Rodriguez moved to have both the Montana Supreme Court record and the Montana Eighth Judicial District Court record transmitted under seal. (D. Ct. Docs. 136, 137.) In Doc. 143, the Court granted the motion as to the Montana Supreme Court record but denied the motion as to the state district court record, concluding that the transcripts and exhibits from the district court "should be contained" within the Montana Supreme Court record.

That conclusion was unsupported by the record and contrary to the nature of appellate review. A state supreme court record typically contains only those documents designated on appeal. It does not necessarily include the entirety of the lower court file, including all pleadings, evidentiary submissions, sealed filings, service records, and intermediate orders. The renewed motion (Doc. 147) specifically informed the Court that the transmitted Supreme Court record was incomplete and did not contain all necessary district court materials from ADN-12-150 and ADN-12-151. The denial in Doc. 143 rested on assumption rather than verification.

The Ninth Circuit has repeatedly held that summary judgment must not be granted where a party is denied access to evidence necessary to oppose the motion. See Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846–47 (9th Cir. 2001). A district court abuses its discretion when it restricts access to relevant evidence and then resolves the case on a truncated record. See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987). Here, DPHHS relied extensively on state court documents and transcripts in its Motion for Summary Judgment. (D. Ct. Docs. 199, 200.) Rodriguez was denied access to the complete state trial record necessary to test those assertions.

Section 1914 of ICWA authorizes a parent to petition a federal court to "invalidate" a state court child-custody action upon a showing that Sections 1911 or 1912 were violated. 25 U.S.C. § 1914. Invalidation requires examination of the underlying proceeding itself — including whether notice was properly given, whether qualified expert testimony was presented, whether active efforts were made, and whether evidentiary burdens were satisfied. See 25 U.S.C. § 1912(a), (d), (e), (f). Those determinations are inseparable from the content of the state district court record.

The Supreme Court has recognized that ICWA establishes minimum federal standards governing state child-custody proceedings involving Indian children. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36–37 (1989). Federal review under § 1914 necessarily requires access to the full state court record to ensure those standards were satisfied. Without the complete ADN-12-150 and ADN-12-151 files, the federal court's ability to evaluate compliance is impaired.

Montana courts similarly emphasize that ICWA compliance must be strictly reviewed on the full record of the termination proceedings. See In re S.R., 2019 MT 47, ¶ 15, 394 Mont. 362, 436 P.3d 696. Where the adequacy of notice, expert testimony, or active

efforts is at issue, the district court file is the operative evidentiary record. Limiting review to the appellate record designated in DA 15-0512 does not guarantee inclusion of all materials relevant to ICWA compliance.

The denial of transmission of the district court record, followed by summary judgment proceedings predicated on selected portions of that same record, created asymmetry in access to evidence. Rodriguez, incarcerated and indigent, sought an order compelling transmission precisely because he could not otherwise obtain the record. (D. Ct. Docs. 136, 137.) The Court granted access to the appellate record but denied access to the underlying trial record, despite the renewed showing that the former was incomplete.

A district court abuses its discretion when it denies access to material evidence necessary to litigate federal statutory claims and then resolves those claims on summary judgment. See Metabolife, 264 F.3d at 846–47. The ruling in Doc. 143 materially prejudiced Rodriguez's ability to litigate his ICWA, § 1983, and constitutional claims, and it impaired meaningful federal review under 25 U.S.C. § 1914.

Judge Brian Morris therefore erred and abused his discretion in denying the motion to transmit the complete state district court record. The denial undermined full adjudication of the federal claims and contributed to resolution of those claims without the benefit of the complete underlying record.

VI) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it denied Rodriguez's Motions for Court Appointed Pro Bono Counsel (D. Ct. Docs. 3, 15, 16, 43, and 166), in its Orders (D. Ct. Docs. 5, 45, and 244), when it failed to appoint counsel to represent Rodriguez in the U.S. District Court, because Rodriguez's case presents exceptional circumstances, complex and unique facts of the case never litigated in Federal Court before which presents a Case of First Impression. Rodriguez's First Amended Complaint (D. Ct. Doc. 42) made it through screening, thus, his complaint stated claims for relief, and therefore suggested that he may succeed on the merits. Denial of counsel severely prejudiced Rodriguez because he was unable to effectively defend against the Defendants Motion for Summary Judgment. Rodriguez is an incarcerated inmate at Montana State Prison and has been since December of 2014. Rodriguez is indigent and Pro Se. English is a second language for Rodriguez. Rodriguez has no legal training or education, and very limited access to legal resources. Rodriguez suffers from severe major depression, severe anxiety, PTSD and ADHD. These disabilities severely effect Rodriguez's cognitive functioning in a negative way; which interfere with his abilities to think properly focus, concentrate, and complete tasks. This case involves Rodriguez's Indian children and the potential negative outcome is causing Rodriguez severe disturbances. Rodriguez has been suffering from these disabilities his entire life. Rodriguez being incarcerated for over eleven-years has made his disabilities considerably worse and harder to manage in order to function properly. Due to these disabilities Rodriguez is tired and exhausted every waking moment of the day. It takes Rodriguez considerably longer to complete tasks, and much longer to research, understand, prepare and file legal documents than it does a properly trained lawyer in the law, or anyone else for that matter (D. Ct. Doc. 221). This case involves state law, federal law, tribal law, tribal customs, state district court records, state supreme court records, U.S. District Court records, and Tribal Court records. The case requires Indian Child Welfare Act testimony from a qualified expert and testimony from a qualified expert on monetary damages. It is unlikely that this case will be settled through mediation and will require a complex and lengthy trial to resolve this matter. It also involves Federal Regulations.

A civil litigant has no constitutional right to appointed counsel, but Congress authorized federal courts to request counsel for indigent litigants under 28 U.S.C. § 1915(e)(1) in "exceptional circumstances." The Ninth Circuit's exceptional-circumstances standard requires the court to evaluate (1) the likelihood of success on the merits and (2) the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). These factors must be viewed together. Terrell, 935 F.2d at 1017. The District Court applied those cases in denying

counsel, but the record demonstrates that the Court failed to properly weigh the exceptional circumstances present here. (D. Ct. Doc. 45.)

Rodriguez repeatedly sought appointment of counsel. He requested counsel at the inception of this action. (D. Ct. Doc. 3.) The Court denied that request without prejudice pending screening. (D. Ct. Doc. 5 at 3.) Rodriguez renewed his request in 2018, again invoking the need for counsel given the complexity of the ICWA-based litigation. (D. Ct. Docs. 15, 16.) Following remand and amendment, he again moved for pro bono counsel. (D. Ct. Doc. 43.) He renewed that request in August 2024 with a detailed motion identifying why the case required counsel, including expert testimony, credibility disputes, extensive fact development, and specialized ICWA practice. (D. Ct. Doc. 166 at 1–4.)

The Court denied counsel in Doc. 45 after remand while acknowledging the complexity of the amended pleading, the large number of defendants, and the need for clarification through briefing. (D. Ct. Doc. 45.) The denial rested on the conclusion that Rodriguez had not shown a likelihood of success and had articulated his claims "effectively enough" to obtain a remand and file an amended complaint. (D. Ct. Doc. 45 at 6.) That reasoning misapplies the exceptional-circumstances standard. The relevant question is not whether Rodriguez can draft a complaint, but whether he can litigate complex statutory, constitutional, and evidentiary issues— including expert testimony and discovery—without counsel. Wilborn, 789 F.2d at 1331. The record shows that the litigation required the development and testing of state-court records, tribal proceedings, and ICWA compliance—precisely the work that cannot be performed effectively by an incarcerated indigent litigant without meaningful legal resources.

Rodriguez's later motion (Doc. 166) documented precisely the type of "exceptional circumstances" contemplated by Ninth Circuit precedent. He detailed that the case required expert testimony (including ICWA expert testimony), extensive factual investigation, depositions, and cross-examination, and that he lacked access to legal resources due to restrictive housing. (D. Ct. Doc. 166 at 1–3.) He further documented that he is indigent, incarcerated, and unable to obtain counsel despite repeated efforts, and that English is a second language. (Id.) Those facts bear directly on the second Terrell factor—ability to litigate in light of complexity—and were not meaningfully credited.

Prejudice from the denial is shown by the procedural posture that followed. Rodriguez's ability to respond to dispositive motions was compromised. In his motion for extension of time to respond to summary judgment, Rodriguez explained that he struggled to comprehend Rule 56 procedure, had limited access to resources due to restrictive housing, and suffered from severe depression, anxiety, PTSD, and ADHD which impaired his ability to focus and complete tasks. (D. Ct. Doc. 221 at 1–2.) This is not generalized difficulty common to all pro se litigants; it is record-based proof of cognitive and logistical barriers directly tied to opposing summary judgment in a complex ICWA case.

The denial of counsel must also be viewed in light of the nature of Rodriguez's remaining claims. The amended case required application of federal ICWA statutes and federal regulations, intersecting with state-court records, tribal court records, and expert testimony requirements—matters that are specialized and fact-intensive. The Court itself recognized in Doc. 45 that pro se plaintiffs are often disadvantaged in discovery and expert testimony, but then treated those realities as insufficient. (D. Ct. Doc. 45 at 6.) Under Terrell and Wilborn, those realities are the exceptional-circumstances inquiry.

On this record, denial of counsel was not a neutral discretionary decision. It materially affected Rodriguez's ability to develop the record, engage in discovery, identify and retain qualified experts, and oppose summary judgment. The combination of the case's complexity, the need for expert testimony, Rodriguez's incarceration and restrictive housing limitations, language barriers, and documented mental-health impairments established exceptional circumstances warranting appointment of counsel under 28 U.S.C. §

1915(e)(1). The District Court therefore erred and abused its discretion in denying Rodriguez's repeated motions for appointment of pro bono counsel. (D. Ct. Docs. 5; 45; 166; 221.)

VII) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it granted DPHHS-DFS Defendants Motion for Summary Judment (D. Ct. Doc. 198), Brief in Support (D. Ct. Doc. 199), and Statement of Undisputed Facts (D. Ct. Doc. 200), it its Order Granting Motion for Summary Judgment (D. Ct. Doc. 231), and dismissed Rodriguez's ICWA claims:

a) The District Court (Judge Brian Morris) was biased, erred, abused its discretion and fabricated facts when he fabricated the year 2009 out of thin air in which he alleged that the underlying state court proceedings (ADN-12-150 and ADN-12-151) in the State of Montana Eighth Judicial District, Cascade County, Great Falls, Montana began, in his Order (D. Ct. Doc. 231.), when in fact the state court proceedings were not initiated until October 5, 2012, the date in which the State of Montana/DPHHS filed its Petition for Emergency Legal Custody in the Montana Eighth Judicial District Court. The Court's declaration of fact is in direct contradiction to undisputed evidence of fact in the record. (D. Ct. Docs. 152 and attachments 1–8, 154 and attachments, 226, 227, 191, and 235.)

The documentary record establishes beyond dispute that ADN-12-150 and ADN-12-151 commenced on October 5, 2012. The Petition for Emergency Legal Custody bears that filing date and corresponding cause numbers. (Doc. 152-5 at 159–160.) There is no filing in 2009 under those cause numbers. The 2009 proceedings referenced elsewhere in the record pertain to separate matters—ADN-09-071 and ADN-09-072—which were transferred to the Chippewa Cree Tribal Court in April 2012. (Doc. 191 at ¶¶ 24–27; Doc. 227 at ¶¶ 24–28; Doc. 235.)

By attributing the commencement of ADN-12-150 and ADN-12-151 to 2009 in Doc. 231, Judge Morris collapsed two legally distinct procedural histories into a single narrative. That conflation materially altered the jurisdictional analysis under 25 U.S.C. § 1911(a). Exclusive tribal jurisdiction attaches at the commencement of the state proceeding. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48–49 (1989). If the proceeding commenced on October 5, 2012—while wardship and on-reservation domicile existed—the State was divested of jurisdiction ab initio. 25 U.S.C. § 1911(a); 25 C.F.R. § 23.110(a)–(b) (state court must dismiss if exclusive jurisdiction exists).

The fabricated 2009 commencement date functioned to insulate the October 2012 re-initiation from scrutiny. If the termination proceeding is treated as an outgrowth of a 2009 action, the April 26, 2012 Tribal Court transfer appears immaterial. But if the proceeding is properly recognized as commencing October 5, 2012—after the Tribal Court had accepted jurisdiction and while the children were wards of that court—the jurisdictional defect becomes dispositive.

Federal courts have consistently held that summary judgment may not rest upon factual premises contradicted by the record. See Tolan v. Cotton, 572 U.S. 650, 657 (2014) (reversing where lower court failed to credit record evidence and instead adopted an inaccurate factual narrative); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (court may not weigh evidence or resolve disputed facts at summary judgment). A district court's reliance on a materially inaccurate factual premise constitutes reversible error. See United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (abuse of discretion occurs where court rests decision on clearly erroneous factual findings).

Montana courts have repeatedly held that ICWA's jurisdictional protections are mandatory and must be strictly enforced. In In re S.R., 2019 MT 47, ¶ 15, the Montana Supreme Court made clear that ICWA's safeguards are not discretionary but binding on state courts. Likewise, in In re C.H., 2000 MT 64, ¶ 24, the court emphasized that ICWA's jurisdictional and procedural requirements must be applied as written. Against that backdrop, attributing a 2009 commencement date to ADN-12-150 and ADN-12-151 allowed the District Court to sidestep the legal consequence of the April–May 2012 transfer and the Tribe's continuing exclusive jurisdiction.

25-4432

The misstatement was not harmless. By treating the termination proceedings as having begun in 2009, the Court reshaped the legal framework governing jurisdiction, notice, active efforts, and the heightened evidentiary burdens imposed by ICWA. Whether exclusive tribal jurisdiction attached under § 1911(a), whether proper notice was required under § 1912(a), whether active efforts were mandated under § 1912(d), and whether the State was required to satisfy the clear-and-convincing and beyond-a-reasonable-doubt standards under §§ 1912(e) and (f) all turn on when the challenged proceeding commenced. The October 5, 2012 filing date is therefore not incidental; it is the jurisdictional fulcrum upon which the legality of the State's authority rests.

Judge Brian Morris therefore erred in granting summary judgment on the basis of a fabricated factual premise. The undisputed record establishes that ADN-12-150 and ADN-12-151 commenced on October 5, 2012. The District Court's contrary declaration in Doc. 231 is unsupported by the record and constitutes reversible error.

**b) The District Court (Judge Brian Morris) was biased, erred, abused its discretion, and deliberately fabricated and manipulated the facts of the underlying state court proceedings (ADN-12-150 and ADN-12-151), in the State of Montana Eighth Judicial District Court, Cascade County, Great Falls, Montana), when it determined and stated in its Order (D. Ct. Doc 231) that the Chippewa Cree Tribe took jurisdiction over J.R. and B.R. parental rights termination case, reunification was unsuccessful, and the children remained in state custody in 2012. The Court's declaration of fact is in direct contradiction to undisputed evidence of fact in the record. See (D. Ct. Docs. 152 and attachments 1-8, 154 and attachments, 226, 227, and 235 and attachments, and 191).**

In its summary judgment Order, Judge Brian Morris stated that the Chippewa Cree Tribe "took jurisdiction" over the parental rights termination case, that reunification efforts were unsuccessful, and that the children remained in state custody in 2012. (Doc. 231) That characterization materially misstates the procedural posture reflected in the record and collapses multiple distinct legal stages into a single conclusory narrative.

The record establishes that the Tribal Court accepted transfer of jurisdiction in April 2012, and that acceptance was filed in Cascade County on May 11, 2012. (Doc. 191 at ¶¶ 24–27; Doc. 227 at ¶¶ 24–28; Doc. 235.) That transfer did not represent the Tribe "taking jurisdiction" over a completed termination proceeding; it represented the lawful transfer of jurisdiction under ICWA. Section 1911(a) provides that where exclusive tribal jurisdiction applies, the Tribe "shall retain exclusive jurisdiction." 25 U.S.C. § 1911(a). Federal courts recognize that once tribal jurisdiction attaches, state authority is displaced. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36–37 (1989). By collapsing the transfer of jurisdiction into a narrative of failed reunification under state custody, the District Court recharacterized a jurisdictional transfer as a termination history.

The October 2012 proceedings (ADN-12-150 and ADN-12-151) were new state-initiated petitions filed after DPHHS seized the children on September 28, 2012. (Doc. 152-5 at 159–160.) They were not the continuation of an ongoing tribal termination action. The record contains no tribal termination decree in 2012 finding reunification "unsuccessful" under ICWA standards. Rather, it reflects DPHHS's unilateral re-initiation of proceedings in state court notwithstanding prior transfer. The characterization that "reunification was unsuccessful" is not a historical fact; it is a disputed conclusion dependent on compliance with § 1912(d)'s "active efforts" requirement and § 1912(f)'s beyond-a-reasonable-doubt evidentiary standard.

Active efforts under § 1912(d) require more than ordinary "reasonable efforts." Courts have consistently held that active efforts impose a heightened and affirmative obligation on the State. See In re A.N., 2005 MT 19, ¶ 23 (recognizing ICWA's heightened protections); see also Doe v. Mann, 415 F.3d 1038, 1047 (9th Cir. 2005) (ICWA enacted to remedy systemic failures in state child custody proceedings involving Indian families). Whether DPHHS provided culturally appropriate, timely, and meaningful active efforts was expressly disputed in Rodriguez's summary judgment opposition. (Docs. 226; 227.) The District Court's statement that reunification was "unsuccessful" presupposes that active efforts were made and failed. That presupposition resolves a contested statutory question.

pg 27 of 49

25-4432

Likewise, termination under § 1912(f) requires proof beyond a reasonable doubt, supported by qualified expert testimony, that continued custody by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f). Whether such testimony was provided, whether the expert was qualified under ICWA standards, and whether the heightened burden was satisfied were factually contested. (Docs. 152; 226; 227.) The District Court's narrative presentation treats those contested elements as established.

The Ninth Circuit has repeatedly held that at summary judgment, a court may not weigh evidence, resolve factual disputes, or draw inferences in favor of the moving party. See Tolan v. Cotton, 572 U.S. 650, 656–57 (2014) (reversing where lower court improperly credited one side's version of disputed facts); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (court's role is not to weigh evidence but to determine whether a genuine issue exists). By accepting DPHHS's characterization of the 2012 proceedings as settled history rather than contested statutory compliance, Judge Morris impermissibly resolved disputed facts.

The statement that "the children remained in state custody in 2012" likewise obscures the central jurisdictional issue. If exclusive tribal jurisdiction existed under § 1911(a) at the time of the October 5, 2012 filing, then continued state custody was not evidence of lawful authority but the product of a jurisdictional defect. See Kalb v. Feuerstein, 308 U.S. 433, 438 (1940) (state court action taken in violation of exclusive jurisdiction is void). The existence of state custody does not validate the legality of that custody. Summary judgment under Federal Rule of Civil Procedure 56(a) is proper only where the record reveals no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Here, the disputed facts went directly to the core ICWA predicates governing the validity of the termination. Whether exclusive tribal jurisdiction attached under § 1911(a), whether the State complied with § 1912(a)'s notice requirements, whether DPHHS satisfied the "active efforts" mandate under § 1912(d), and whether the heightened evidentiary burdens under §§ 1912(e) and (f) were met were all contested in Rodriguez's Response and Statement of Disputed Facts. (Docs. 226; 227.) Each of those disputes, if resolved in Rodriguez's favor, would invalidate the termination under § 1914. Resolving them at summary judgment in favor of DPHHS was therefore improper.

Judge Brian Morris therefore erred in granting summary judgment. By recasting contested statutory compliance issues as settled historical facts and adopting DPHHS's narrative as undisputed, the District Court improperly resolved genuine disputes of material fact. The record does not support the conclusion that reunification failed under ICWA standards or that state custody in 2012 reflected lawful jurisdiction. Summary judgment on that basis was improper.

**c) The District Court (Judge Brian Morris) erred and abused its discretion when it determined/ordered the dismissal of Rodriguez's ICWA claims against all individual State DPHHS Defendants in its Order (D. Ct. Doc: 231) in direct contradiction of the Ex parte Young doctrine and relief available under 25 U.S.C. § 1914.**

In granting summary judgment, Judge Brian Morris dismissed all individual DPHHS officials on the premise that they lacked authority to return custody and therefore were not proper parties to Rodriguez's § 1914 claim. (Doc. 231 at 5.) That reasoning misapprehends both the nature of the relief authorized under ICWA and the scope of the Ex parte Young doctrine. The dismissal insulated the very officials whose conduct is alleged to have violated §§ 1911–1913 from prospective federal relief.

Section 1914 expressly authorizes a parent to petition "any court of competent jurisdiction" to invalidate a state court child-custody action taken in violation of § 1911, § 1912, or § 1913. 25 U.S.C. § 1914. The Ninth Circuit has recognized that § 1914 creates an independent federal cause of action to invalidate state ICWA violations. Doe v. Mann, 415 F.3d 1038, 1046–47 (9th Cir. 2005). The remedy contemplated is equitable and corrective. It targets unlawful state action and its continuing legal consequences. Nothing in § 1914 limits that relief to suits nominally styled against "the court" rather than the officials who executed and defended the challenged actions.

*pg 28 of 49*

25-4432

The Supreme Court's decision in Ex parte Young, 209 U.S. 123 (1908), permits suits against state officials in their official capacities for prospective equitable relief to end ongoing violations of federal law. The Court has repeatedly reaffirmed that Young applies where the plaintiff alleges an ongoing violation and seeks forward-looking relief. Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002); Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 255–56 (2011). The critical inquiry is whether the state official has "some connection" with enforcement of the challenged act. Ex parte Young, 209 U.S. at 157. The doctrine exists to prevent states from immunizing unlawful conduct simply by invoking sovereign status.

Rodriguez's § 1914 claim alleges ongoing violations of federal law arising from the removal, notice failures, lack of active efforts, defective expert testimony, and termination of parental rights. The individual DPHHS defendants were not peripheral actors. They initiated the October 5, 2012 petitions (ADN-12-150 and ADN-12-151), executed removal decisions, implemented placement orders, participated in notice practices under § 1912(a), asserted compliance with § 1912(d) active efforts, and defended the termination in subsequent proceedings. (Docs. 42; 152; 226; 227; 235.) Their connection to the enforcement and implementation of the challenged actions is direct and substantial.

The District Court's conclusion that only a court could "return custody" improperly narrows the inquiry. The relief authorized under § 1914 is not limited to a mechanical return of physical custody under § 1916. It includes invalidation of unlawful state action and restoration of legal parental rights. Where state officials are responsible for implementing and maintaining the consequences of an allegedly unlawful termination decree, they fall squarely within Young's framework.

Federal courts have consistently permitted suits against state child-welfare officials for prospective relief in cases alleging ongoing violations of federal statutory rights. See, e.g., Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704–05 (9th Cir. 1992) (Young permits suit against state officials to enjoin ongoing constitutional violations); see also Doe v. Mann, 415 F.3d at 1046–47 (recognizing federal invalidation authority in ICWA context). The logic is straightforward: when officials enforce or perpetuate a state action that allegedly violates federal law, they are proper defendants for prospective relief.

The dismissal of individual DPHHS defendants therefore did more than streamline parties; it altered the substantive scope of the § 1914 remedy. By removing the officials responsible for the challenged conduct, the Court effectively restricted Rodriguez's ability to obtain meaningful prospective relief against the ongoing legal consequences of the termination order.

Judge Brian Morris thus erred in dismissing the individual DPHHS defendants. Section 1914 authorizes federal invalidation of unlawful state ICWA actions, and Ex parte Young permits prospective relief against state officials connected to those actions. The individual defendants were proper parties, and their dismissal constituted reversible error.

d) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that it could not address whether Rodriguez received ineffective assistance of counsel in the state court proceedings, which directly conflicts with Rodriguez's rights as guaranteed in Doe v. Mann, 285 F. Supp. 2d 1229, 1240 (N.D. Cal. 2003). "Indigent Indians are entitled to counsel who can effectively represent their interests." Rodriguez was indigent and represented by court-appointed counsel for the vast majority of the state court proceedings, which is fact supported by undisputed evidence in the record (D. Ct. Docs. 152 and attachments 1-8, 154 and attachments, 226, 227 and attachments, and 235 and attachments). Ineffective assistance of counsel is a 25 U.S.C. § 1912(b) violation warranting reversal of the state court proceedings. Rodriguez was constructively denied counsel, which constitutes structural error. These federal proceedings were Rodriguez's first opportunity to raise his ineffective assistance of counsel claims.

Section 1912(b) of ICWA provides that in any involuntary proceeding, "the parent or Indian custodian shall have the right to court-appointed counsel" if indigent. 25 U.S.C. § 1912(b). The statutory right to counsel under ICWA is not symbolic; it is substantive. In

*pg 29 of 49*

Doe v. Mann, the district court recognized that "[i]ndigent Indians are entitled to counsel who can effectively represent their interests." 285 F. Supp. 2d at 1240. That recognition flows directly from the structure of ICWA, which was enacted to correct systemic deficiencies in state child-custody proceedings involving Indian families. See 25 U.S.C. § 1901(4)–(5); Doe v. Mann, 415 F.3d 1038, 1047 (9th Cir. 2005).

Constructive denial of counsel constitutes structural error. United States v. Cronic, 466 U.S. 648, 659 (1984). Federal courts have recognized that the right to counsel in termination proceedings implicates fundamental liberty interests and must be meaningfully protected. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981) (parental rights are among the most fundamental liberty interests protected by the Constitution). Where Congress has elevated that protection through statute, as it did in Section 1912(b), compliance is mandatory. Montana courts likewise require strict adherence to ICWA's procedural safeguards in termination proceedings. In re S.R., 2019 MT 47, ¶ 15, 394 Mont. 362, 436 P.3d 696.

Rodriguez was indigent and represented by court-appointed counsel throughout the vast majority of the state proceedings. (Docs. 152; 226; 227; 235.) He alleges that counsel failed to assert exclusive tribal jurisdiction under Section 1911(a), failed to enforce notice under Section 1912(a), failed to demand strict compliance with active efforts under Section 1912(d), failed to challenge the adequacy of qualified expert testimony under Sections 1912(e) and (f), and failed to preserve objections central to ICWA compliance. Each of those failures concerns statutory predicates that must be satisfied before termination may lawfully occur under Section 1912.

Judge Brian Morris concluded that he could not address Rodriguez's ineffective assistance of counsel claim because it would require review of state court proceedings. (Doc. 231.) That conclusion is inconsistent with Section 1914, which expressly authorizes a federal court to invalidate a state child-custody action upon a showing that Section 1912 was violated. 25 U.S.C. § 1914. Where a parent alleges that the right to counsel guaranteed by Section 1912(b) was denied or rendered ineffective, that allegation falls squarely within the statutory invalidation framework. Section 1914 authorizes invalidation upon a showing that any provision of Section 1912 was violated. A denial of effective representation under Section 1912(b) is a violation of that provision and therefore falls squarely within the statute's mandate.

This case represents Rodriguez's first opportunity to raise ineffective assistance in a forum capable of addressing federal ICWA violations. The Supreme Court has recognized that where a federal statute creates a substantive right and an independent federal remedy, federal courts must enforce that right notwithstanding state procedural posture. See Testa v. Katt, 330 U.S. 386, 394 (1947). Congress enacted Section 1914 to provide a federal corrective mechanism for unlawful state proceedings involving Indian children.

Judge Brian Morris therefore erred in declining to address Rodriguez's ineffective assistance claim. By concluding that ineffective assistance under Section 1912(b) was beyond the scope of Section 1914 review, the District Court misconstrued the statute's plain text and declined to adjudicate a violation that Congress expressly authorized federal courts to invalidate. Where the right to counsel guaranteed by ICWA is constructively denied, the resulting termination cannot stand.

e) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that Rodriguez's ICWA claims were barred by both Res Judicata and Claim Preclusion, because Res Judicata and Claim Preclusion do not apply to ICWA claims brought in federal court pursuant to 25 U.S.C. § 1914, which Congress specifically enacted to allow federal courts to invalidate state court termination proceedings for violations of the ICWA, and because the ICWA issues and violations Rodriguez raises in federal court were never litigated or decided in the state court action that led to the judgment terminating his parental rights (ADN-12-150 and ADN-12-151) or in the appeal of that judgment (DA 15-0512). See Doe v. Mann, 285 F. Supp. 2d 1229 (N.D. Cal. 2003).

25-4432

Judge Brian Morris concluded that Rodriguez's ICWA claims were barred because the Montana state courts had already entered and affirmed a termination judgment. (Doc. 231.) That reasoning disregards the independent federal invalidation remedy Congress enacted in Section 1914. Section 1914 authorizes "any parent" to petition "any court of competent jurisdiction" to invalidate a state child-custody action upon a showing that Sections 1911, 1912, or 1913 were violated. 25 U.S.C. § 1914. The statute does not condition that remedy on the absence of a prior state judgment. It does not require that the violation first be litigated in state court. It authorizes invalidation upon proof of noncompliance.

The Ninth Circuit has already recognized that Section 1914 creates federal-question jurisdiction independent of state appellate review. In Doe v. Mann, the district court rejected the argument that ICWA invalidation claims were barred by res judicata, holding that Section 1914 reflects Congress's determination that conventional finality doctrines must yield where federal ICWA violations are alleged. 285 F. Supp. 2d at 1238–40. The Ninth Circuit affirmed that jurisdictional analysis and recognized Section 1914 as a valid mechanism for federal review of state termination proceedings. 415 F.3d 1038, 1046–47 (9th Cir. 2005). That holding is binding here.

Res judicata applies only where the same claim was fully and fairly litigated and decided on the merits. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008). Claim preclusion likewise requires identity of claims and a prior final judgment resolving those claims. Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007). The federal ICWA violations Rodriguez raises here—including exclusive tribal jurisdiction under Section 1911(a), defective notice under Section 1912(a), denial of effective counsel under Section 1912(b), failure of active efforts under Section 1912(d), and failure to meet the heightened evidentiary burdens under Sections 1912(e) and (f)—were not adjudicated under federal ICWA standards in the state proceedings. The Montana courts did not conduct a Section 1914 invalidation analysis. They did not apply the federal framework Doe v. Mann requires.

Nor does the Rooker-Feldman doctrine rescue the preclusion analysis. The Ninth Circuit has made clear that a federal claim alleging independent statutory violations is not barred merely because it relates to a prior state judgment. Noel v. Hall, 341 F.3d 1148, 1156–58 (9th Cir. 2003). Where a plaintiff asserts that a state judgment was procured in violation of federal law and seeks relief authorized by Congress, the claim is independent. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140–41 (9th Cir. 2004). Section 1914 expressly authorizes that independent federal inquiry.

Congress enacted ICWA in response to systemic state failures in Indian child custody proceedings. 25 U.S.C. § 1901(4)–(5). Section 1914 is the enforcement mechanism for that congressional judgment. Allowing state preclusion doctrines to extinguish Section 1914 claims would nullify the federal corrective structure Congress created. As the Supreme Court has long held, state courts may not refuse to give effect to federal rights. Testa v. Katt, 330 U.S. 386, 394 (1947). Likewise, federal courts may not decline to exercise the jurisdiction Congress has conferred.

Judge Brian Morris therefore erred in applying res judicata and claim preclusion to bar Rodriguez's Section 1914 claims. Because Congress created an independent federal remedy to invalidate state ICWA violations, and because the specific federal issues raised here were neither fully nor fairly litigated under that statutory framework in the state proceedings, summary judgment on preclusion grounds was improper.

f) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that Rodriguez's I.C.W.A. claims in (D. Ct. Docs. 42, 197, 226, 227, and 235) were further barred by Res Judicata, because they had purportedly been raised and decided in the prior Montana state court proceedings, which is contrary to fact supported by undisputed evidence in the record that Rodriguez's ICWA claims were not raised in the Montana State court proceedings. And, even if some or part of Rodriguez's claims of ICWA violations had been raised in the state court proceedings Rodriguez did not have a full

25-4432

and fair opportunity to litigate those ICWA violations due to ineffective counsel and the narrow scope of the state court proceedings.

In Doc. 231, Judge Brian Morris determined not only that res judicata applied in general, but that the specific ICWA violations raised in Rodriguez's federal pleadings had already been raised and resolved in the Montana termination proceedings and on appeal. (Doc. 231.) That factual premise is contradicted by the record.

The ICWA violations asserted in Rodriguez's federal filings—including exclusive tribal jurisdiction under Section 1911(a), defective notice under Section 1912(a), denial of effective counsel under Section 1912(b), failure of active efforts under Section 1912(d), and failure to satisfy the heightened evidentiary burdens under Sections 1912(e) and (f)—were not fully litigated under federal ICWA standards in the state court action (ADN-12-150 and ADN-12-151) or in the appeal (DA 15-0512). The state court record does not reflect adjudication of a Section 1914 invalidation claim, nor does it reflect findings addressing the specific federal statutory framework invoked here. (D. Ct. Docs. 152; 226; 227; 235.)

Under Ninth Circuit law, claim preclusion requires that the identical claim or cause of action have been actually litigated or that the party had a full and fair opportunity to litigate it. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007). The Ninth Circuit has further clarified that claim preclusion applies only where there is identity of claims, a final judgment on the merits, and privity between parties. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003). Identity of claims is determined by whether the two actions arise out of the same transactional nucleus of facts and whether the rights established in the prior judgment would be impaired by prosecution of the second action. Id. at 1078.

Here, Rodriguez's federal ICWA claims arise under Section 1914, which authorizes invalidation of state court proceedings upon proof of statutory violations. That statutory cause of action was not litigated in state court. The Montana termination proceeding was conducted as a state dependency action, not as a Section 1914 invalidation proceeding. The appeal in DA 15-0512 did not transform the case into a federal statutory adjudication.

The Ninth Circuit has also recognized that claim preclusion does not bar a federal claim where Congress has created a specific federal remedial scheme that contemplates independent federal review. See Noel v. Hall, 341 F.3d 1148, 1156–58 (9th Cir. 2003). Section 1914 expressly provides such a remedial framework.

Even assuming arguendo that aspects of ICWA were mentioned in the state proceedings, preclusion still does not apply unless Rodriguez had a full and fair opportunity to litigate the federal statutory claims. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 480–81 (1982). The Ninth Circuit has held that due process concerns may preclude application of res judicata where the party lacked a meaningful opportunity to present the claim. See Gonzalez v. Arizona, 677 F.3d 383, 389 (9th Cir. 2012) (en banc) (preclusion principles incorporate due process requirements).

Rodriguez was indigent and represented by court-appointed counsel whose effectiveness he now challenges under Section 1912(b). Where ineffective assistance undermines the integrity of the prior proceedings, courts decline to give preclusive effect to the judgment. See Richards v. Jefferson County, 517 U.S. 793, 797 (1996). If counsel failed to assert jurisdictional defects, failed to enforce notice requirements, or failed to demand compliance with active efforts and qualified expert testimony standards, the state proceedings cannot be treated as having fully and fairly adjudicated those federal rights.

Moreover, Section 1914 reflects Congress's intent to allow federal courts to invalidate state termination proceedings notwithstanding prior state adjudication where statutory violations occurred. See Doe v. Mann, 415 F.3d 1038, 1046–47 (9th Cir. 2005). Allowing res judicata to bar claims that were not fully litigated under federal standards would nullify the remedy Congress created.

25-4432

Judge Brian Morris therefore erred in concluding that Rodriguez's specific ICWA claims had already been raised and decided in state court. The record does not support that factual determination, and the legal standard for claim preclusion was misapplied. Summary judgment on that basis was improper.

g) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that the Chippewa Cree Indian Tribe and Tribal Court did not have exclusive subject matter jurisdiction over Rodriguez's Indian children J.R. and B.R. pursuant to 25 U.S.C. § 1911(a) despite undisputed evidence in the record that the Indian children are Enrolled Members of the Chippewa Cree Indian Tribe, were domiciled on the Rocky Boy's Indian Reservation, and were Wards of the Chippewa Cree Indian Tribal Court (Tribal Court Cause No. 2012-cv cc-1418 and 1419) before, during, and after the time when the State of Montana-DPHHS Defendants illegally seized J.R. and B.R. from Rodriguez's custody and home on the night of September 28, 2012, and filed its Petition for Emergency Legal Custody on October 5, 2012, in the State of Montana Eighth Judicial District Court, Cascade County, Great Falls, Montana (Cause No. ADN-12-150 and ADN-12-151) (D. Ct. Docs. 42, 152 and attachments 1-8, 154 and attachments, 191, 198, 199, 200, 226, 227 and attachments, and 235 and attachments).

The State of Montana first initiated child-custody proceedings involving J.R. (ADN-09-071) and B.R. (ADN-09-072) in 2009. Those proceedings were later transferred pursuant to the Indian Child Welfare Act to the Chippewa Cree Tribal Court. On April 26, 2012, the Tribal Court formally accepted transfer of jurisdiction from the Montana Eighth Judicial District Court through duly executed Motions and Orders to Accept Transfer of Jurisdiction Under ICWA in Tribal Court Cases 2012-cv-cc-1418 and 2012-cv-cc-1419. The Cascade County District Court filed that acceptance order on May 11, 2012, thereby divesting itself of jurisdiction and directing that all subsequent child-custody matters be handled by the tribal judiciary. From that point forward, the Chippewa Cree Tribal Court exercised continuing and exclusive authority over J.R. and B.R.

When DPHHS removed J.R. and B.R. in late September 2012, both children were domiciled on the Rocky Boy's Indian Reservation and remained wards of the Chippewa Cree Tribal Court. Their wardship status existed before, during, and after September 28, 2012—the date the State removed them from Rodriguez's home, care, and custody. (Docs. 191 at ¶¶ 24–27; 227 at ¶¶ 24–28; 235.) Wardship alone triggered exclusive tribal jurisdiction under 25 U.S.C. § 1911(a).

Despite that unequivocal transfer and continuing wardship, DPHHS unilaterally re-initiated state dependency proceedings on October 5, 2012 (Cause Nos. ADN-12-150 and ADN-12-151), only eight days after seizing the children. The State's filings reflect that tribal notice was not provided until October 19, 2012—three weeks after removal. During that interval, DPHHS sought and obtained ex parte emergency custody orders from the Cascade County District Court without notifying the Tribe, without obtaining a qualified ICWA expert affidavit as required by 25 U.S.C. § 1912(e)–(f), and without determining whether the children remained within the Tribe's exclusive jurisdiction.

25 U.S.C. § 1911(a) provides that an Indian tribe "shall have exclusive jurisdiction as to any State" over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation "or who is a ward of a tribal court." The statute is written in mandatory terms. It is not permissive. It does not contemplate concurrent authority where wardship exists. The implementing regulation reinforces this command: "If the Indian child is a ward of a Tribal court, the State court must immediately dismiss any child-custody proceeding." 25 C.F.R. § 23.110(b). The regulation further requires the State court to determine at any time whether exclusive jurisdiction applies and to dismiss and transmit the record to the Tribal Court if it does. 25 C.F.R. § 23.110(a). The 2016 BIA Guidelines reiterate that where wardship exists, state jurisdiction is displaced as a matter of law.

The State's decision to proceed in Cascade County notwithstanding existing tribal wardship was ultra vires. Once a tribal court exercises jurisdiction, subsequent state action taken in contravention of that jurisdiction exceeds lawful authority. See In re Adoption of

*pg 33 of 49*

25-4432

Buehl, 87 Wash. 2d 649, 555 P.2d 1334 (1976) (state court lacked jurisdiction where tribal court had assumed custody). The principle reflected in Buehl aligns with the federal structure codified in ICWA: exclusive tribal jurisdiction, once vested, cannot be overridden by unilateral state action.

Judge Brian Morris nevertheless accepted DPHHS's assertion that the Chippewa Cree Tribe had "declined to intervene." (Doc. 231 at 6.) That conclusion is unsupported by the record. Montana law requires that a tribe's waiver or declination of jurisdiction be express and unequivocal. In re J.W.C., 2011 MT 312, ¶ 21, 363 Mont. 129, 265 P.3d 553. Silence, delay, or failure to intervene does not constitute relinquishment of exclusive jurisdiction. The only tribal order contemporaneous with the October 2012 events was the Tribal Court's October 2, 2012 dismissal entered and filed October 5, 2012—the same day the State initiated new proceedings. That dismissal followed the State's unilateral seizure and filing and does not reflect a voluntary waiver of tribal authority.

Domicile independently compels the same result. In Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989), the Supreme Court held that domicile under § 1911(a) is determined as a matter of federal law and that a minor child's domicile follows that of the parents. Physical presence off reservation does not defeat domicile. The record evidence establishes that Rodriguez and his family were domiciled on the Rocky Boy's Reservation pursuant to Tribal Court orders before the September 2012 seizure. Under Holyfield, that domicile controlled for purposes of exclusive jurisdiction.

Jurisdiction under § 1911(a) attaches at the commencement of the state proceeding. Holyfield, 490 U.S. at 48–49. DPHHS filed its Petition for Emergency Legal Custody on October 5, 2012. At that moment, J.R. and B.R. were wards of the Tribal Court and domiciled on the reservation. Exclusive tribal jurisdiction had already vested. The State was divested of authority ab initio.

Montana precedent confirms that ICWA's jurisdictional protections are mandatory and strictly enforced. In re S.R., 2019 MT 47, ¶ 15, 394 Mont. 362, 436 P.3d 696; In re K.H., 2018 MT 204, ¶ 17, 392 Mont. 300, 423 P.3d 947; In re C.H., 2000 MT 64, ¶ 24, 299 Mont. 62, 997 P.2d 776. Judge Morris's conclusion cannot be reconciled with Montana's strict-compliance jurisprudence or the federal mandate.

Under 25 U.S.C. § 1914, a parent may petition a federal court to invalidate a state court action taken in violation of § 1911. Where exclusive jurisdiction exists, state proceedings are void. Kalb v. Feuerstein, 308 U.S. 433, 438 (1940). Rodriguez preserved wardship, domicile, and jurisdictional timing disputes in opposing summary judgment in his Response and Statement of Disputed Facts. (Docs. 226; 227.) DPHHS did not eliminate those disputes. Judge Brian Morris therefore erred in granting summary judgment. By resolving federal jurisdictional predicates against Rodriguez and upholding state jurisdiction in the face of § 1911(a)'s exclusive mandate, the District Court committed reversible error.

**(h)(1) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it failed to recognize that the State of Montana and DPHHS did not timely notify the Chippewa Cree Tribe of the September 28, 2012 removal of Rodriguez's Indian children, in violation of 25 U.S.C. § 1912(a).**

On September 28, 2012, DPHHS removed J.R. and B.R. from Rodriguez's custody and home. The State filed its Petition for Emergency Legal Custody on October 5, 2012. (D. Ct. Doc. 42; see also Docs. 226, 227.) ICWA mandates that in any involuntary child custody proceeding involving an Indian child, the party seeking foster care placement or termination of parental rights must notify the child's tribe "by registered mail with return receipt requested" of the pending proceedings and of the tribe's right to intervene. 25 U.S.C. § 1912(a). No foster care placement or termination proceeding may be held until at least ten days after receipt of such notice. Id. The record reflects that tribal notice was not provided contemporaneously with the September 28, 2012 removal or the October 5, 2012 petition for emergency custody. (Docs. 152; 226; 227; 235.) Instead, notice to the Tribe occurred only after state court proceedings were already underway. That delay constitutes a material violation of Section 1912(a). A violation of Section 1912(a) is

pg 34 of 49

25-4432

jurisdictionally significant because Section 1914 expressly authorizes invalidation of state court proceedings conducted in violation of Sections 1911, 1912, or 1913 (25 U.S.C. § 1914). Federal courts do not treat ICWA notice defects as harmless where the Tribe was deprived of its statutory right to timely intervene, because delayed notice undermines the federal protections Congress mandated. The notice requirement under Section 1912(a) is mandatory and strictly construed. The Ninth Circuit has recognized that ICWA's procedural safeguards are designed to ensure tribal participation at the earliest stage of proceedings affecting Indian children. *Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005). Montana courts likewise hold that strict compliance with ICWA notice provisions is required. *In re K.H.*, 2018 MT 204, ¶ 17; *In re S.R.*, 2019 MT 47, ¶ 15. Notice after removal and initiation of emergency custody proceedings does not satisfy the statute's requirement that the Tribe be informed in time to meaningfully exercise its right to intervene.

The Supreme Court emphasized in *Mississippi Band of Choctaw Indians v. Holyfield* that ICWA's provisions must be applied uniformly as federal law to prevent state circumvention of tribal authority. 490 U.S. 30, 43–47 (1989). Delayed notice frustrates that federal purpose by allowing state courts to take significant actions affecting custody before the Tribe can participate. Whether the Tribe received timely notice prior to emergency custody proceedings, whether the statutory ten-day waiting period was observed, and whether proceedings were conducted before receipt of notice were material factual disputes preserved in Rodriguez's opposition filings. (Docs. 226; 227.) These issues bear directly on the validity of the state court proceedings and the availability of invalidation relief under Section 1914.

By failing to recognize and address the State's delayed tribal notice following the September 28, 2012 removal, and by resolving the Section 1912(a) issue in favor of Defendants at summary judgment, Judge Brian Morris disregarded ICWA's mandatory notice requirement and its strict compliance standard. The analysis did not examine whether notice preceded the initiation of emergency custody proceedings. The Court did not determine whether the statutory ten-day waiting period was honored, nor did it address whether the Tribe was afforded a meaningful opportunity to intervene before state court action proceeded. Instead, the notice violation was treated as legally insignificant, and summary judgment was entered despite preserved disputes of material fact. For these reasons, Judge Morris erred and abused his discretion though his ruling, which materially undermined the federal protections Congress enacted in Section 1912(a) and the invalidation remedy provided in Section 1914.

(h)(2) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that both Rodriguez and the Chippewa Cree Tribe had received notification of the second parental rights termination hearing (a retrial convened after the first hearing was set aside) by registered mail with return receipt requested, which began on December 12, 2014, and halfway through the trial it was held in abeyance until June 25, 2015, and finally concluded on June 29, 2015, which contradicts undisputed evidence in the record (D. Ct. Docs. 226, 227 and attachments, and 235 and attachments) containing the State of Montana Eighth Judicial District Court's "Case Register/Docket Sheet" for both ADN-12-150 and ADN-12-151, which unequivocally shows that no notice by registered mail with return receipt requested for the Second Termination Hearing was ever sent to either Rodriguez or the Chippewa Cree Indian Tribe prior to trial held on December 12, 2014, in which Rodriguez's parental rights were ultimately terminated, in violation of the mandatory ICWA notice requirement of 25 U.S.C. § 1912(a).

Section 1912(a) of ICWA provides that in any involuntary proceeding in a state court, "the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested," of the pending proceedings. 25 U.S.C. § 1912(a). The statute further prohibits the court from holding the proceeding until at least ten days after receipt of such notice. Id. The notice requirement is mandatory and jurisdictional in nature. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36–37 (1989) (ICWA reflects congressional intent to establish minimum federal standards governing state child custody proceedings involving Indian children).

P335oP49

25-4432

The Ninth Circuit has consistently required strict compliance with ICWA's notice provisions. See, e.g., Doe v. Mann, 415 F.3d 1038, 1047 (9th Cir. 2005) (recognizing federal enforcement of ICWA procedural safeguards); see also Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 553 (9th Cir. 1991) (strict adherence to ICWA requirements is necessary to protect tribal interests). Courts routinely reverse or invalidate termination orders where notice was defective. See In re S.R., 2019 MT 47, ¶ 15 (ICWA protections are mandatory and strictly applied).

Federal and state courts have repeatedly reversed or invalidated termination orders for failure to strictly comply with Section 1912(a)'s notice requirement. The Ninth Circuit has recognized that defective ICWA notice undermines the validity of termination proceedings and warrants reversal. See Doe v. Mann, 415 F.3d at 1046–47 (recognizing federal authority to invalidate proceedings where ICWA procedures were not followed); see also Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 553 (9th Cir. 1991) (strict compliance with ICWA notice provisions required to protect tribal interests). Montana courts likewise treat ICWA notice defects as reversible error. See In re S.R., 2019 MT 47, ¶ 15 (ICWA protections are mandatory and strictly applied). Courts do not treat Section 1912(a) as a technicality; where notice by registered mail with return receipt requested is not provided, termination proceedings are subject to invalidation.

In Doc. 231, Judge Brian Morris determined that Rodriguez and the Chippewa Cree Tribe had received notice of the second termination hearing by registered mail with return receipt requested. (Doc. 231.) That factual finding is contradicted by the documentary record. The official Case Register/Docket Sheets for ADN-12-150 and ADN-12-151—submitted in D. Ct. Docs. 226, 227, and 235—contain no entry reflecting registered mail notice to either Rodriguez or the Tribe prior to the December 12, 2014 retrial.

The docket sheets reflect the scheduling of the second termination hearing beginning December 12, 2014, the mid-trial abeyance, and the reconvening in June 2015. They do not reflect any entry for registered mail notice with return receipt requested to the Tribe or to Rodriguez as required by Section 1912(a). The absence of such entries in the official court register is significant. ICWA requires affirmative, documented compliance. Silence in the docket is not compliance.

The second termination hearing was not a mere continuation of prior proceedings. The first termination trial had been set aside. The retrial constituted a new adjudicative event requiring fresh compliance with ICWA's notice mandates. Section 1912(a) does not distinguish between original and retrial proceedings; it requires notice in "any involuntary proceeding." 25 U.S.C. § 1912(a). A retrial on termination plainly falls within that language.

Failure to provide proper notice under Section 1912(a) is not a technical defect. It implicates tribal sovereignty and the Tribe's right to intervene, transfer, or otherwise protect its interests. See 25 U.S.C. § 1911(c). Where notice is deficient, the proceeding is subject to invalidation under Section 1914. The Ninth Circuit has recognized that Section 1914 authorizes federal invalidation of state court actions taken in violation of Section 1912. Doe v. Mann, 415 F.3d at 1046–47.

Under Federal Rule of Civil Procedure 56, a court may not grant summary judgment based on factual findings contradicted by undisputed documentary evidence. See Tolan v. Cotton, 572 U.S. 650, 657 (2014). The official docket sheets submitted by Rodriguez constitute objective court records. Judge Morris's finding that registered mail notice was provided is unsupported by those records.

Judge Brian Morris therefore erred in granting summary judgment based on a factual finding directly contradicted by the record. Because Section 1912(a) requires notice by registered mail with return receipt requested before a termination proceeding may lawfully proceed, and because the record contains no evidence that such notice was provided for the December 12, 2014 retrial, the termination order is subject to invalidation under Section 1914.

pg 36 of 49

25-4432

i) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that Rodriguez had not been constructively denied counsel, in violation of 25 U.S.C. § 1912(b), which constitutes structural error. Rodriguez was actually and constructively denied counsel, because he was not appointed counsel, in cause no. ADN-12-150 and ADN-12-151, until October 25, 2012, which was 27 days after Rodriguez's Indian children J.R. and B.R. were illegally seized from his custody and home on September 28, 2012, which was 20 days after the State of Montana-DPHHS filed its Petition for Emergency Legal Custody on October 5, 2012, and which was 10 days after the state court in secret and without a hearing granted the Petition for Temporary Legal Custody, and without the testimony of an ICWA Expert adjudicated J.R. and B.R. as Youths in Need of Emergency Protective Services, and placing the children with non-Indian and non-Family involuntary foster placement. This adjudication was a critical stage in the proceedings.

Rodriguez's rights to court appointed counsel under § 1912(b) were further violated when on January 8, 2013, Judge Pinski rescinded Rodriguez's appointment of counsel without notice or an opportunity to oppose the removal of counsel, on the same day that a Notice of Determination Regarding Indigency was filed with the court. In order for the public defenders office to make an indigency determination it requires the participation of the indigent. It requires that the indigent fill out a financial form and this was never done. The Public defenders office had no evidence to justify their determination that Rodriguez did not qualify as indigent and entitled to court appointed counsel, which left Rodriguez completely unrepresented again and without counsel until January 25, 2013, when Patrick Paul entered his notice of appearance. This is all fact on the record supported by undisputed evidence (D. Ct. Docs.'42, 152 and attachments 1-8, 154 and attachments, 226, 227 and attachments, 191, and 235 and attachments).

Section 1912(b) mandates appointment of counsel for indigent parents in involuntary ICWA proceedings: "the parent or Indian custodian shall have the right to court-appointed counsel" if indigent. 25 U.S.C. § 1912(b). This is not a procedural courtesy; it is a substantive federal safeguard designed to prevent the unwarranted breakup of Indian families. See 25 U.S.C. § 1901(4)–(5). In Doe v. Mann, the district court recognized that "[i]ndigent Indians are entitled to counsel who can effectively represent their interests." 285 F. Supp. 2d 1229, 1240 (N.D. Cal. 2003), aff'd, 415 F.3d 1038 (9th Cir. 2005). The Ninth Circuit affirmed that Section 1914 authorizes federal invalidation of state ICWA violations, including violations of Section 1912. 415 F.3d at 1046–47.

Constructive denial of counsel constitutes structural error. United States v. Cronic, 466 U.S. 648, 659 (1984). Structural error exists where counsel is absent at a critical stage or where representation is so deficient that the adversarial process itself is compromised. The Supreme Court has recognized that termination of parental rights implicates fundamental liberty interests. Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981). When Congress codified the right to counsel in Section 1912(b), it elevated that protection in the ICWA context. The guarantee of counsel necessarily includes effective and timely representation at critical stages.

The state court record supports Rodriguez's timeline of delayed appointment and gaps in representation. The Office of the State Public Defender issued a "Notice of Appointment of Counsel" appointing Jane Berger to represent Rodriguez in ADN-12-150 (and related companion proceedings), dated and served in October 2012. (Doc. 152-4 at 201–202.) This record evidence supports Rodriguez's position that counsel was not appointed until weeks after removal and after the State had already proceeded in court.

The denial repeated when Judge Gregory G. Pinski entered an Order Rescinding Appointment of Counsel in ADN-12-150 on January 8, 2013, removing the Office of the State Public Defender and appointed counsel based on an indigency determination notice. (Doc. 152-4 at 211–212.) The order recites that the court had ordered Rodriguez to complete an indigency affidavit and then states: "On January 8, 2013, the Office of the State Public Defender gave notice to the Defendant that he did not qualify for representation," and the court rescinded the referral and removed counsel. (Doc. 152-4 at 211–212.) The companion order in ADN-12-151 reflects the

pg 37 of 49

25-4432

same sequence, with the public defender notice dated January 9, 2013 and the court's rescission order entered thereafter. (Doc. 152-4 at 212.) These orders confirm that Rodriguez was again left without counsel during a consequential stage of the case. The Ninth Circuit has held that waiver of fundamental rights must be knowing and voluntary. See United States v. Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004). There is no record evidence of such waiver here.

After the rescission, Rodriguez did not regain representation until Patrick L. Paul entered to represent him. The record reflects Paul's filings in late January 2013, including a motion stating counsel "was just retained to represent Mr. Rodriguez." (Doc. 152-4 at 215–216.) This gap in representation underscores Rodriguez's constructive-denial claim.

The District Court's conclusion that Rodriguez was not constructively denied counsel (Doc. 231.) cannot be squared with the statutory command of Section 1912(b) and the record showing delayed appointment, rescission of appointed counsel by court order, and periods of complete unrepresentation. (Doc. 152-4 at 201–202, 211–212, 215–216.) The question is not whether Rodriguez ever had a lawyer at some point; it is whether the proceeding complied with ICWA's guarantee of counsel at the stages where the State sought and obtained custody orders and advanced toward termination.

This constructive denial is material under Section 1914 because Congress authorized federal courts to invalidate state child-custody actions upon a showing that Section 1912 was violated. (25 U.S.C. § 1914; Doe v. Mann, 415 F.3d 1038, 1046–47 (9th Cir. 2005).) Where the right to counsel guaranteed by Section 1912(b) is denied at critical stages and the parent is left unrepresented through court action rescinding appointed counsel, the resulting proceedings are not reliable and are subject to invalidation.

The timeline reflected in the state court record—delayed appointment, rescission of counsel, and unrepresented critical stages—creates, at minimum, a genuine issue of material fact regarding violation of Section 1912(b). Summary judgment is inappropriate where material facts concerning denial of statutory counsel protections are disputed. See Tolan v. Cotton, 572 U.S. 650, 657 (2014). Judge Brian Morris therefore erred in granting summary judgment on the premise that no constructive denial occurred. (Doc. 231.)

j) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that Rodriguez's I.C.W.A claims brought under 25 U.S.C. § 1914 were moot simply because his Indian children reached or would reach the age of majority. Rodriguez seeks the full and complete restoration of his parental rights to his Indian children J.R. and B.R. Rodriguez's parental rights do not become moot simply because his children reached the age of majority, because the legal relationship between parent and child continues to exist long after the child reaches 18 years of age, and vice versa. Rodriguez continues to have a protected liberty interest in the companionship of his adult children. Sinclair v. City of Seattle, 61 F.4th 674 (9th Cir. 2023). Furthermore, the Indian Child Welfare Act does not contain an age limit for the granting of relief pursuant to 25 U.S.C. § 1914 to invalidate a state court judgment terminating the parental rights of Indians and their Indian children for violations of the I.C.W.A. Thus the wrongful termination of Rodriguez's parental rights to his Indian children J.R. and B.R. in violation of the I.C.W.A continues to have standing and be a live controversy long after the children have reached the legal age of majority under § 1914 (D. Ct. Docs. 42, 152 and attachments 1-8, 154 and attachments, 191, 226, 227 and attachments, and 235 and attachments). To declare that Rodriguez's I.C.W.A. claims are moot would be to deprive Rodriguez of the only legal remedy available to him under the law for the wrongful termination of his parental rights to his Indian children.

Conventional notions of finality have no place where life, liberty, and the liberty interest of an Indian family and their unity are at stake and infringement of constitutional and ICWA rights is alleged. Congress specifically enacted 25 U.S.C. § 1914 to provide a federal remedy to invalidate state court proceedings that violate §§ 1911, 1912, or 1913. Doe v. Mann, 415 F.3d 1038, 1047 (9th Cir. 2005) (recognizing § 1914 as a federal invalidation mechanism). The authority to invalidate state court action under § 1914 represents

pg 38 of 49

25-4432

a congressional departure from strict application of res judicata principles in ICWA cases. See Red Fox v. Red Fox, 564 F.2d 361, 365 n.3 (9th Cir. 1977) (acknowledging federal policy justifying departure from ordinary finality doctrines where Indian interests are implicated).

Federal courts addressing § 1914 claims have likewise rejected attempts to extinguish ICWA invalidation remedies through procedural technicalities. In Jumping Eagle v. Warren, CIV 18-4131, 2021 U.S. Dist. LEXIS 24621, 2021 WL 462644 (D. S.D. Feb. 9, 2021), the court recognized that § 1914 creates an independent federal mechanism to invalidate state termination orders where ICWA violations are shown. Similarly, in Hawkings v. Sacramento County Dep't of Child & Family Servs., 2022 U.S. Dist. LEXIS 2455, 2022 WL 51192 (E.D. Cal. Jan. 5, 2022), the court acknowledged that § 1914 authorizes federal review of termination proceedings and is not foreclosed merely because state proceedings have concluded. These authorities reinforce that Congress intended § 1914 to operate as a continuing remedial safeguard—not one extinguished by time or procedural posture.

DPHHS argued—and Judge Brian Morris accepted—that Rodriguez's claims became moot because J.R. has reached the age of eighteen and B.R. will reach the age of eighteen before trial. (Doc. 231.) That argument confuses physical custody under 25 U.S.C. § 1916 with invalidation under § 1914. While the relief granted under § 1916—return of physical custody—may become impracticable once a child reaches majority, the statutory right under § 1914 to invalidate an unlawful termination decree does not expire with age. Section 1914 contains no temporal limitation tied to the child's age. It authorizes "any parent... from whose custody such child was removed" to petition "any court of competent jurisdiction" to invalidate the offending action. 25 U.S.C. § 1914.

The Ninth Circuit has recognized that the parent–child relationship implicates a constitutionally protected liberty interest. Sinclair v. City of Seattle, 61 F.4th 674 (9th Cir. 2023). That liberty interest does not evaporate upon a child's eighteenth birthday. The legal relationship between parent and child persists beyond the age of majority. The injury inflicted by an unlawful termination order— severing not only custody but legal lineage, inheritance rights, cultural affiliation, and family unity—continues to exist long after a child turns eighteen.

Under Montana law, termination of parental rights does not merely affect temporary custody; it severs legal rights extending to lineage, guardianship, and intergenerational relationships. See MCA §§ 40-8-125; 40-9-102(5), (8). The wrongful and illegal termination of Rodriguez's parental rights effectively terminated and legally severed his rights to his children and, by extension, the rights of his entire descendant bloodline. Therefore, the termination of Rodriguez's parental rights to J.R. and B.R. remains a live controversy until corrected.

The Supreme Court has explained that a case becomes moot only when it is impossible for a court to grant any effectual relief whatsoever. Chafin v. Chafin, 568 U.S. 165, 172 (2013). Here, effectual relief remains available: vacatur and invalidation of the state termination judgment under § 1914. That relief restores legal status, lineage, and the integrity of the family relationship—even if physical custody cannot be reimposed.

Judge Brian Morris therefore erred in granting summary judgment on mootness grounds. The existence of continuing legal consequences and the availability of statutory invalidation relief under § 1914 preclude a finding of mootness. By concluding otherwise, the District Court improperly extinguished Rodriguez's only congressionally authorized remedy for the unlawful termination of his parental rights.

k) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 231) that Rodriguez failed to show any material fact that would change the outcome of the case and reverse the termination of his parental rights, because Rodriguez raised genuine issues of material fact which precluded dismissal or summary judgment regarding the state courts failure to hold a hearing within 72 hours of the removal of his children—Swipies v. Kafka, 419 F.3d 709, 715 (8th Cir.

pg 39 of 49

25-4432

2005), violations of exclusive tribal jurisdiction § 1911(a), Notice Requirement Violations § 1912(a), Violations of Right to Counsel § 1912(b), Violations of the Right to Examination of Reports and Other Documents § 1912(c), Violations of the Right to Remedial Services and Rehabilitative Preventative Measures "Active Efforts" § 1912(d), Violation of Rights Regarding Foster Care Placement Orders, Evidence, Determination of Damage to the Child and Expert I.C.W.A. Testimony § 1912(e), Violation of Parental Rights in Termination Orders and Evidence Beyond a Reasonable Doubt and Determination of Damage to the Child and the Requirements of Qualified I.C.W.A. Expert Testimony § 1912(f), which the court either completely ignored, failed to address, or incorrectly resolved issues of material fact in favor of the Defendants which should have been left for a jury to resolve at trial. (D. Ct. Docs. 42, 152 and attachments 1-8, 154 and attachments, 191, 197, 226, 227, and 235 and attachments). This is all fact on the record supported by undisputed evidence in the record of the above cited D. Ct. Docs.

The District Court's conclusion that Rodriguez failed to raise any material fact cannot be reconciled with ICWA's statutory framework or the governing summary judgment standard. ICWA imposes mandatory procedural and evidentiary safeguards designed to prevent the unwarranted breakup of Indian families. 25 U.S.C. §§ 1911–1913; Doe v. Mann, 415 F.3d 1038, 1047 (9th Cir. 2005) (recognizing that ICWA was enacted to rectify state court actions that resulted in the removal of Indian children from their communities and heritage). Montana courts likewise hold that ICWA's protections are mandatory and must be strictly applied. In re S.R., 2019 MT 47, ¶ 15, 394 Mont. 362, 436 P.3d 696; In re C.H., 2000 MT 64, ¶ 24, 299 Mont. 62, 997 P.2d 776.

Rodriguez raised a genuine dispute regarding the State's failure to provide a prompt post-removal hearing. The children were removed and emergency custody was granted ex parte. The constitutional requirement of a prompt post-deprivation hearing in child removal cases is well established. Swipies v. Kafka, 419 F.3d 709, 715 (8th Cir. 2005). In the ICWA context, where federal statutory rights and tribal sovereignty are implicated, the adequacy and timing of such hearings are material questions. Whether the State complied with both constitutional due process and ICWA's heightened procedural safeguards presented a factual dispute preserved in Rodriguez's opposition. (Docs. 226; 227.) That dispute could not properly be resolved at summary judgment.

Rodriguez further raised genuine disputes of material fact regarding exclusive tribal jurisdiction under Section 1911(a). Section 1911(a) provides that an Indian tribe shall have exclusive jurisdiction over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation, or who is a ward of a tribal court. 25 U.S.C. § 1911(a). Exclusive jurisdiction under Section 1911(a) is not discretionary; it divests state courts of authority once the statutory conditions are met. The Supreme Court held in *Mississippi Band of Choctaw Indians v. Holyfield* that domicile for ICWA purposes is a matter of federal law and that Congress intended exclusive tribal jurisdiction to be applied uniformly to prevent state circumvention of tribal authority. 490 U.S. 30, 43–45 (1989).

Rodriguez presented evidence that his Indian children were enrolled members of the Chippewa Cree Tribe, were domiciled on the Rocky Boy's Reservation, and were wards of the Chippewa Cree Tribal Court at the time of removal and subsequent proceedings. (Docs. 152 and attachments 1–8; 226; 227; 235.) Those facts, if credited, establish exclusive tribal jurisdiction under Section 1911(a) and render state court termination proceedings void ab initio. Whether the children were domiciled on the reservation, whether wardship existed at the time of state intervention, and whether the Tribe had exclusive authority were material factual disputes preserved in Rodriguez's opposition to summary judgment. (Docs. 226; 227.)

Under Rule 56, the court was required to draw all reasonable inferences in Rodriguez's favor. Instead, Judge Brian Morris resolved the jurisdictional predicate against Rodriguez and treated state jurisdiction as undisputed. Because exclusive jurisdiction under Section 1911(a) would invalidate the termination proceedings under Section 1914, the existence of a factual dispute on domicile or wardship precluded summary judgment. The District Court therefore erred in concluding that no material fact existed regarding tribal jurisdiction.

*pg 40 of 49*

25-4432

Rodriguez also raised material disputes under § 1912(a)'s notice requirement. ICWA requires notice by registered mail with return receipt requested and prohibits proceedings until at least ten days after receipt. 25 U.S.C. § 1912(a). The record reflects delayed tribal notice following removal and initiation of emergency proceedings. (Doc. 152; Doc. 226.) Courts have consistently treated compliance with § 1912(a) as mandatory, not discretionary. See In re K.H., 2018 MT 204, ¶ 17 (strict compliance required where ICWA applies). Whether notice was timely and statutorily sufficient was a material factual issue that precluded summary judgment.

Rodriguez further raised violations of § 1912(b), which guarantees indigent parents the right to appointed counsel in involuntary proceedings. The adequacy, timing, and effectiveness of representation were disputed in the record. (Docs. 226; 227.) Because the right to counsel under ICWA is a statutory safeguard integral to protecting Indian families, whether that right was fully honored is a question of fact that cannot be dismissed through conclusory summary judgment findings.

Section 1912(c) guarantees the right to examine all reports and documents filed with the court. Rodriguez asserted that access to investigative reports and materials was restricted or delayed. (Docs. 226; 227.) Montana courts recognize that ICWA's procedural protections must be strictly observed. In re S.R., 2019 MT 47, ¶ 15. Whether the State complied with § 1912(c) was therefore a material factual dispute.

The "active efforts" requirement under § 1912(d) imposes a heightened burden on the State to provide remedial services designed to prevent the breakup of the Indian family. Active efforts exceed ordinary "reasonable efforts" standards. See Doe v. Mann, 415 F.3d at 1047; In re A.N., 2005 MT 19, ¶ 23 (recognizing ICWA's heightened protections). Rodriguez contested whether DPHHS made culturally appropriate and meaningful active efforts prior to seeking termination. (Docs. 226; 227.) The sufficiency of active efforts is inherently fact-intensive. It cannot be resolved against the nonmovant where disputed evidence exists.

Sections 1912(e) and 1912(f) impose elevated evidentiary standards for foster care placement and termination. Foster care placement requires clear and convincing evidence, including testimony of a qualified ICWA expert witness. 25 U.S.C. § 1912(e). Termination requires proof beyond a reasonable doubt, supported by qualified expert testimony, that continued custody is likely to result in serious emotional or physical damage. 25 U.S.C. § 1912(f). Whether qualified expert testimony was presented, whether the expert met ICWA standards, and whether the statutory burdens were satisfied were contested in Rodriguez's filings. (Docs. 152; 226; 227.) The determination of whether those heightened burdens were met is a fact-bound inquiry inappropriate for resolution where disputes remain.

Under Federal Rule of Civil Procedure 56, summary judgment is proper only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The materiality of these ICWA violations is evident: each, if proven, would invalidate the termination under § 1914. By determining that Rodriguez failed to present any material fact capable of altering the outcome, Judge Brian Morris effectively weighed evidence, resolved contested factual issues, and accepted DPHHS's version of compliance as undisputed.

Judge Brian Morris therefore erred in granting summary judgment. The record reflects genuine disputes regarding notice, counsel, access to reports, active efforts, qualified expert testimony, jurisdiction, and evidentiary standards. Because ICWA mandates strict compliance and imposes heightened burdens, those disputes should have been resolved by a fact-finder at trial, not by summary judgment.

VIII) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined and granted the State of Montana-DPHHS's Motion (D. Ct. Doc. 218) and Brief in Support (D. Ct. Doc. 219) to Stay Discovery which was filed on 11/20/2024, in its Order (D. Ct. Doc. 220) on 11/21/2024 which was only twenty-four hours after it was filed by the Defendants and without giving Rodriguez notice of the Motion or the opportunity to object or contest it before it was granted. The motion was filed

pg 41 of 49

just 41 days after the State of Montana-DPHHS Defendants had filed their Motion for Summary Judgment (D. Ct. Doc. 198, 199, and 200). At this time Rodriguez had only been allowed to pursue discovery since the Scheduling Order (D. Ct. Doc.189) had been issued on September 25, 2024, or 56 days. The State of Montana-DPHHS Defendants never complied with any of Rodriguez's diligent discovery requests and no depositions had been taken. Rodriguez was never given a full and fair opportunity to conduct any meaningful discovery to gather evidence in support of his claims and was precluded full factual development of the record that was needed to effectively oppose and defend against Defendants Motion for Summary Judgment, which the Court granted in its Order (D. Ct. Doc. 231) on 12/23/2024, which was only thirty-two days after discovery had been stayed. This is a clear Rule 56(d) violation which severely prejudiced Rodriguez.

Federal Rule of Civil Procedure 56(d) protects a nonmovant from summary judgment where essential facts are unavailable to oppose the motion. The Rule provides that if a party shows that it cannot present facts essential to justify its opposition, the court may defer consideration of the motion, allow time to obtain discovery, or issue any appropriate order. Fed. R. Civ. P. 56(d). The Ninth Circuit has repeatedly held that summary judgment should not be granted where the nonmovant has not had a reasonable opportunity to conduct discovery. See Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001) ("A district court should grant a Rule 56(d) motion fairly freely."); Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes, 323 F.3d 767, 773–74 (9th Cir. 2003).

Here, the timeline is dispositive. The Scheduling Order was issued on September 25, 2024 (D. Ct. Doc. 189). Rodriguez had approximately fifty-six days of nominal discovery before Defendants moved to stay discovery on November 20, 2024 (D. Ct. Doc. 218), just forty-one days after filing their Motion for Summary Judgment (D. Ct. Docs. 198–200). The District Court granted the motion to stay within twenty-four hours, on November 21, 2024 (D. Ct. Doc. 220), without notice to Rodriguez and without affording him an opportunity to oppose the stay.

The Order granting the stay contains no Rule 56(d) analysis and no findings explaining why discovery should be halted. (D. Ct. Doc. 220.) It states only that "good cause" was shown and stays discovery pending resolution of summary judgment. Id. The Ninth Circuit requires more than conclusory invocation of "good cause" when discovery is cut off before a dispositive ruling. See Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846–47 (9th Cir. 2001). Where a court grants summary judgment while discovery is incomplete, it must ensure that the nonmovant had a fair opportunity to develop the record. The absence of any Rule 56(d) evaluation in Doc. 220 underscores the procedural defect.

The Ninth Circuit has cautioned that granting summary judgment while discovery is stayed or incomplete is disfavored, particularly where the evidence necessary to oppose the motion lies within the control of the moving party. See Metabolife, 264 F.3d at 846–47 (error to grant summary judgment where party had not been afforded sufficient discovery). Rodriguez had served discovery requests. The State had not complied. No depositions had been taken. The stay foreclosed the very mechanisms by which Rodriguez could obtain evidence necessary to challenge Defendants' factual assertions regarding ICWA compliance, notice, active efforts, qualified expert testimony, and jurisdiction.

Defendants themselves acknowledged in their Brief in Support of the Motion to Stay that discovery responses were not yet due at the time summary judgment briefing was underway. (D. Ct. Doc. 219.) In other words, the State moved to stay discovery before it had complied with Rodriguez's requests and before responses were even required under the Rules. Granting a stay under those circumstances ensured that Rodriguez could not obtain the very information Defendants argued was unnecessary, while simultaneously urging the Court to accept their factual assertions as undisputed.

The need for discovery was not abstract. ICWA imposes heightened statutory burdens that are fact-intensive and evidence-driven. Section 1912(d) requires proof of "active efforts" to prevent the breakup of the Indian family. Section 1912(e) requires clear and

pg 42 of 49

convincing evidence, including testimony of a qualified expert witness, that continued custody is likely to result in serious emotional or physical damage. Section 1912(f) requires proof beyond a reasonable doubt, supported by qualified expert testimony, before parental rights may be terminated. 25 U.S.C. §§ 1912(d), (e), (f). Each of these burdens depends upon documentary evidence, agency records, service logs, internal DPHHS communications, expert qualifications, and the factual basis of claimed harm—information largely within the possession of the State. Without depositions, document production, and expert examination, Rodriguez was prevented from testing the State's claimed compliance with these statutory requirements. Staying discovery effectively insulated Defendants' factual assertions from adversarial scrutiny while simultaneously asking the Court to accept those assertions as undisputed.

The prejudice is evident from the sequence of events. Discovery was stayed on November 21, 2024. Summary judgment was granted on December 23, 2024 (D. Ct. Doc. 231), only thirty-two days later. The District Court therefore resolved disputed ICWA compliance issues without permitting factual development. The Ninth Circuit has reversed summary judgment where a party was denied the opportunity to develop the record necessary to oppose the motion. See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987). The Ninth Circuit has further emphasized that summary judgment is disfavored where "the relevant facts are in the exclusive control of the moving party." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001).

Moreover, the stay was granted without notice or opportunity to be heard. Due process requires that a party be afforded notice and an opportunity to respond before adverse procedural rulings that materially affect the case are entered. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Granting a discovery stay within twenty-four hours of filing, without opposition briefing, deprived Rodriguez of a meaningful opportunity to contest the restriction.

Judge Brian Morris therefore erred in granting the motion to stay discovery and in subsequently granting summary judgment without permitting full factual development. Under Rule 56(d) and controlling Ninth Circuit authority, the combination of a stayed discovery period and an accelerated summary judgment ruling constitutes an abuse of discretion that materially prejudiced Rodriguez's ability to present his ICWA claims.

IX) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined and GRANTED the State of Montana-DPHHS Defendants Motion (D. Ct. Doc. 237) and Brief in Support (D. Ct. Doc. 238) to Dismiss Rodriguez's Third Amended Complaint (D. Ct. Doc. 235) in its Order (D. Ct. Doc.: 250) and directed the Clerk of Court to close the case and enter Final Judgment (D. Ct. Doc. 251):

a) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion when it determined in its Order (D. Ct. Doc. 250) that Res Judicata applied to bar Rodriguez's Third Amended Complaint (D. Ct. Doc. 235) ICWA claims despite newly pled factual allegations and then deliberately failed to and refused to revisit and re-evaluate its own Orders (D. Ct. Docs. 95, 104, 155, and 231) which were from earlier in the very same proceedings.

In its June 12, 2025 Order, the District Court concluded that Rodriguez's Third Amended Complaint was barred by res judicata because the Court had previously dismissed the same claims, including his ICWA claim. (Doc. 250 at 4–5.) The Court applied Montana's five-factor res judicata test and determined that all elements were satisfied. Id. The Court further stated that Rodriguez "fails to assert any new claims not previously addressed by the Court." (Doc. 250 at 5.)

That analysis misapplies the doctrine of res judicata in two fundamental respects. First, res judicata generally operates to bar subsequent actions following entry of a final judgment. It does not ordinarily bar amended pleadings within the same proceeding before final resolution of all issues. Federal Rule of Civil Procedure 54(b) expressly provides that any order adjudicating fewer than all claims "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). The Ninth Circuit has held that district courts retain inherent authority to reconsider, rescind, or modify interlocutory orders prior to final judgment. City of Los Angeles v. Santa

Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001). The Ninth Circuit has cautioned that claim preclusion must be applied narrowly where Congress has created a specific federal remedial scheme. See Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052–53 (9th Cir. 2005). The prior orders relied upon by the District Court—including Doc. 95 , Doc. 104 , and Doc. 231 —were issued within the same action and were interlocutory as to the ICWA claim prior to entry of final judgment in Doc. 251. The Court possessed full authority to revisit and reassess those rulings in light of newly pled factual allegations.

Second, the Third Amended Complaint (Doc. 235-1) is not merely a verbatim restatement of prior pleadings. It incorporates expanded factual allegations, including detailed record-based assertions previously presented in opposition to summary judgment, and further elaborates on alleged ICWA violations, jurisdictional defects, notice failures, active efforts deficiencies, and constructive denial of counsel. Under Rule 12(b)(6), the Court was required to accept these factual allegations as true and determine whether they plausibly stated a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (standard expressly cited in Doc. 250). The Court instead concluded, without engaging the newly pled factual content, that the claims were barred.

The Ninth Circuit has made clear that when a plaintiff amends a complaint to add material factual allegations, a court must evaluate the sufficiency of those allegations under the governing pleading standards. See Peralta v. Dillard, 744 F.3d 1076, 1086–87 (9th Cir. 2014) (en banc) (courts must credit newly pled factual matter and reassess viability of claims). A court may not short-circuit that analysis by invoking res judicata within the same case to avoid reconsideration of factual development.

Moreover, the Court's own December 31, 2024 Order expressly allowed Rodriguez to amend his complaint. (Doc. 232.) By granting leave to amend and then dismissing the amended pleading on res judicata grounds without substantive evaluation of the new allegations, the Court effectively nullified its own grant of amendment. Such a procedural posture conflicts with the liberal amendment policy embodied in Federal Rule of Civil Procedure 15(a).

Finally, even assuming arguendo that aspects of Rodriguez's ICWA claim had previously been adjudicated, the proper analytical framework within the same proceeding would have been law-of-the-case doctrine—not claim preclusion. Law-of-the-case is discretionary and does not bar reconsideration where new evidence, clear error, or manifest injustice is shown. See United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). The District Court did not conduct that analysis. Instead, it applied external res judicata principles as if this were a separate action.

Judge Brian Morris therefore erred in applying res judicata to bar Rodriguez's Third Amended Complaint within the same action and in refusing to revisit prior interlocutory rulings in light of newly pled factual allegations. The dismissal under Doc. 250 was improper, and the entry of final judgment under Doc. 251 constitutes reversible error.

**b) The District Court (Judge Brian Morris) was biased, erred and abused its discretion in its Order (D. Ct. Doc. 250) when it misapplied Rule 12(b)(6) and Rule 56 prematurely terminating the case.**

In dismissing the Third Amended Complaint, the District Court invoked Rule 12(b)(6) while simultaneously relying on prior factual determinations and summary judgment findings. (Doc. 250.) A Rule 12(b)(6) motion tests the sufficiency of the pleadings; it does not permit a court to resolve factual disputes or rely on prior evidentiary determinations adverse to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). By incorporating its earlier summary judgment analysis (Doc. 231) into its Rule 12 dismissal, the Court effectively applied Rule 56 standards without affording Rodriguez the procedural protections of Rule 56(d) or renewed discovery.

25-4432

The Ninth Circuit has cautioned against collapsing Rule 12 and Rule 56 standards. Where a district court relies on matters outside the pleadings or prior factual determinations to dismiss a complaint, it must either convert the motion to one for summary judgment or confine its review to the pleadings. See Fed. R. Civ. P. 12(d); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). The dismissal here rested not on the sufficiency of newly pled facts, but on prior rulings. That constitutes a premature termination of the case.

**c) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion in its Order (D. Ct. Doc. 250) when it failed to consider live I.C.W.A. claims under 25 U.S.C. §§ 1911, 1912, and 1914, in Rodriguez's Third Amended Complaint (D. Ct. Doc. 235).**

The Third Amended Complaint expressly reasserted federal ICWA violations under Sections 1911, 1912, and 1914. (D. Ct. Doc. 235.) Section 1914 authorizes "any parent" to petition "any court of competent jurisdiction" to invalidate a state court child-custody action upon a showing that Sections 1911 or 1912 were violated. 25 U.S.C. § 1914. The Ninth Circuit has recognized that Section 1914 creates an independent federal remedy to invalidate state ICWA violations. Doe v. Mann, 415 F.3d 1038, 1046–47 (9th Cir. 2005). These claims are live federal statutory claims grounded in congressional authority.

Congress enacted ICWA pursuant to its plenary authority over Indian affairs, and its provisions preempt conflicting state procedures. See U.S. Const. art. I, § 8, cl. 3; Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43–45 (1989). ICWA establishes minimum federal standards governing state child custody proceedings involving Indian children. 25 U.S.C. § 1902. A federal court may not decline to address properly pled ICWA violations by treating them as procedurally extinguished within the same action.

Doc. 250 does not apply the Rule 12(b)(6) pleading standard to the ICWA allegations set forth in the Third Amended Complaint. Instead, it relies on prior rulings to conclude that the claims have already been resolved. (D. Ct. Doc. 250.) Under Iqbal, the Court was required to accept the newly pled factual allegations as true and determine whether they plausibly stated violations of Sections 1911, 1912, and 1914. 556 U.S. at 678. By declining to conduct that analysis, the Court failed to engage the federal statutory framework Congress enacted to remedy unlawful state termination proceedings.

**d) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion in its Order (D. Ct. Doc. 250) and during the entire proceedings by its refusal and failure to acknowledge the structural nature of ICWA rights.**

ICWA establishes minimum federal standards designed to protect Indian children, Indian families, and tribal sovereignty. 25 U.S.C. § 1902. The Supreme Court has recognized that Congress enacted ICWA in response to the widespread removal of Indian children from their families by state courts and agencies. Holyfield, 490 U.S. at 32–37. The protections codified in Sections 1911 and 1912 are structural safeguards, not discretionary procedural preferences.

Montana courts have emphasized that ICWA's protections are mandatory and must be strictly applied. In re S.R., 2019 MT 47, ¶ 15, 394 Mont. 362, 436 P.3d 696. Montana appellate courts have reversed termination orders where ICWA requirements were not strictly followed. See In re A.N., 2005 MT 19, ¶ 23. These decisions reflect recognition that ICWA violations affect the integrity of the proceeding itself.

By dismissing the Third Amended Complaint without engaging the structural character of the rights asserted under Sections 1911, 1912, and 1914, the District Court treated ICWA claims as ordinary collateral challenges rather than as congressionally mandated federal safeguards. The failure to acknowledge the structural nature of those rights resulted in dismissal without substantive adjudication of federal statutory protections designed to safeguard tribal interests and Indian family unity.

25-4432

e) The District Court (Judge Brian Morris) was biased, erred, and abused its discretion in its Order (D. Ct. Doc. 250) and Final Judgment (D. Ct. Doc. 251) when it closed the case without reaching the merits and without addressing Rodriguez's newly pled factual allegations in regards to all named Defendants and I.C.W.A. violations.

The Third Amended Complaint contained expanded factual allegations directed at all named Defendants and at specific ICWA violations. (Doc. 235-1.) Under Rule 12(b)(6), those allegations were required to be accepted as true for purposes of evaluating plausibility. Iqbal, 556 U.S. at 678. Instead of conducting that analysis, the District Court relied on preclusion and prior rulings to dismiss the action and directed the Clerk to enter Final Judgment. (Docs. 250; 251.)

By closing the case without substantive evaluation of the newly pled factual allegations, the Court effectively terminated the action on procedural grounds without adjudicating the merits of the federal ICWA claims. Where Congress has created an independent federal remedy under Section 1914, dismissal without reaching the merits—based on misapplied preclusion principles—constitutes reversible error.

## X) Relief Sought:

For the foregoing reasons, Plaintiff–Appellant, Pro Se, Juan Anastasio Rodriguez respectfully requests that this Honorable Court:

a) Declare That:

1. The U.S. District Court was biased, erred, and abused its discretion when it failed to Order service of all named Defendants, and when it denied Rodriguez's Motion to Compel Service of the remaining Defendants who had not been served.

2. The U.S. District Court erred and abused its discretion when it ruled that Rodriguez's ICWA claims, brought in Federal Court pursuant to 25 U.S.C. § 1914, were subject to a Six-Month Statute of Limitations under State law, rather than a Two-Year or longer Analogous Limitations period under Federal Law.

3. That the Statute of Limitations for filing an action in Federal Court pursuant to 25 U.S.C. § 1914, for violations of the ICWA, is Two-Years or longer.

4. The U.S. District Court was biased, erred, and abused its discretion when it dismissed Rodriguez's 42 U.S.C. § 1983 claims with prejudice as time barred.

5. That Rodriguez's 42 U.S.C. § 1983 claims were timely filed and not barred by the statute of limitations.

6. That the U.S. District Court erred and abused its discretion when it dismissed with prejudice Rodriguez's Due Process claims without leave to Amend and without declaring that amendment would be futile.

7. That the U.S. District Court erred and abused its discretion when it dismissed with prejudice Rodriguez's Equal Protection claims without leave to Amend and without declaring that amendment would be futile.

8. That the U.S. District Court erred and abused its discretion when it dismissed with prejudice Rodriguez's claim in count 32 without leave to Amend and without declaring that amendment would be futile.

9. That the U.S. District Court erred and abused its discretion when it sua sponte set aside the Clerk's Entries of Default against Defendants Judith Hartelius (78), Anna Fisher (82), and Amanda Hope Fortenberry (86), and denied Rodriguez's Motions for Entry of Default Judgment against Defendants Judith Hartelius (79), Anna Fisher (83), and Amanda Hope Fortenberry (87).

10. That the U.S. District Court was biased, erred, and abused its discretion when it sua sponte dismissed all claims against all Defendants which the Court deliberately failed to have served with Rodriguez's Summons and First Amended Complaint.

11. That the U.S. District Court was biased, erred, and abused its discretion when it deliberately failed to issue the Scheduling Order for almost Four Years.

pg 46 of 49

12. That the U.S. District Court was biased, erred, and abused its discretion when it sua sponte intervened between Rodriguez and the Clerk's Office, and directed the Clerk's Office not to enter Rodriguez's Requests for Entry of Default against Defendants Amanda Hope Fortenberry (126 and 161), Judith Hartelius (127 and 162), and Anna Fisher (128 and 160).

13. That the U.S. District Court was biased, erred, and abused its discretion when it sua sponte intervened between Rodriguez and the Clerk's Office, and directed the Clerk's Office not to enter Rodriguez's Request for Entry of Default against State of Montana-DPHHS Defendants (158) and Defendant Lisa Anderson Mangan (159).

14. That the U.S. District Court was biased, erred, and abused its discretion when it denied Rodriguez's Motions (137 and 147) to transmit the State of Montana Eighth Judicial District Court Record (Under Seal) to the U.S. District Court Record.

15. That the U.S. District Court was biased, erred, and abused its discretion when it denied Rodriguez's Motions for Court Appointed Counsel.

16. That the U.S. District Court was biased, erred, and abused its discretion when it manufactured and fabricated facts, when it declared that the underlying State Court proceedings ADN-12-150 and ADN-12-151 began in the year 2009.

17. That the underlying State Court proceedings ADN-12-150 and ADN-12-151 did not begin until October 5, 2012.

18. That the U.S. District Court was biased, erred, and abused its discretion when it manipulated and fabricated facts, when it declared that the Chippewa Cree Tribe took jurisdiction of J.R. and B.R.'s parental rights case, reunification was unsuccessful, and that the children remained in State custody in 2012.

19. That the U.S. District Court erred and abused its discretion when it dismissed Rodriguez's ICWA claims against all individual State of Montana-DPHHS Defendants.

20. That the U.S. District Court was biased, erred, and abused its discretion when it determined that it could not address whether or not Rodriguez received ineffective assistance of counsel in the State Court proceedings.

21. That Rodriguez's counsel was ineffective, and that he was deprived of effective assistance of counsel in the State Court proceedings.

22. That the U.S. District Court was biased, erred, and abused its discretion when it determined that Rodriguez's ICWA claims were barred in Federal Court by both Res Judicata and Claim Preclusion.

23. That the U.S. District Court was biased, erred, and abused its discretion when it determined that Rodriguez's ICWA claims were further barred in Federal Court by Res Judicata because they had purportedly been raised and decided in the prior Montana State Court proceedings.

24. That the U.S. District Court was biased, erred, and abused its discretion when it determined that the Chippewa Cree Indian Tribe and Tribal Court did not have exclusive subject matter jurisdiction over Rodriguez's Indian children J.R. and B.R. pursuant to 25 U.S.C. § 1911(a).

25. That the Chippewa Cree Indian Tribe and Tribal Court DID have exclusive subject matter jurisdiction over Rodriguez's Indian children J.R. and B.R. pursuant to 25 U.S.C. § 1911(a).

26. That the U.S. District Court was biased, erred, and abused its discretion when it determined that both Rodriguez and the Chippewa Cree Tribe had received notification of the Second Parental Rights Termination hearing/trial which began on December 12, 2014.

27. That Rodriguez and the Chippewa Cree Tribe did NOT receive Notification by Registered Mail with Return Receipt Requested for the Second Parental Rights Termination hearing/trial which began on December 12, 2014, as required by ICWA 25 U.S.C. § 1912(a).

28. That the U.S. District Court was biased, erred, and abused its discretion when it determined that Rodriguez has not been constructively denied counsel in the underlying State Court proceedings.

29. That Rodriguez was constructively denied counsel in the underlying State Court proceedings.

30. That the U.S. District Court was biased, erred, and abused its discretion when it determined that Rodriguez's ICWA claims brought in Federal Court under 25 U.S.C. § 1914 were moot.

31. That Rodriguez's ICWA claims brought in Federal Court under 25 U.S.C. § 1914 are NOT Moot, continue to have Standing, and remain a live controversy.

32. That the U.S. District Court was biased, erred, and abused its discretion when it determined Rodriguez had failed to show any material fact that would change the outcome of the case and reverse the termination of his parental rights in the State Court proceedings.

33. That Rodriguez did succeed in showing material facts that would have changed the outcome of the case and reverse the termination of his parental rights in the State Court proceedings for violations of ICWA 25 U.S.C. §§ 1911(a), 1912(a), 1912(b), 1912(c), 1912(d), 1912(e), and 1912(f).

34. That the U.S. District Court was biased, erred, and abused its discretion when it granted the State of Montana-DPHHS Defendants' Motion to Stay Discovery.

35. That the U.S. District Court was biased, erred, and abused its discretion when it determined that Res Judicata applied to bar Rodriguez's Third Amended Complaint.

36. That Rodriguez's Third Amended Complaint was NOT barred by Res Judicata.

37. That the U.S. District Court was biased, erred, and abused its discretion when it misapplied Rule 12(b)(6) and Rule 56 and prematurely terminated the case.

38. That the U.S. District Court was biased, erred, and abused its discretion when it failed to consider live ICWA claims under 25 U.S.C. §§ 1911, 1912, and 1914 in Rodriguez's Third Amended Complaint.

39. That the U.S. District Court was biased, erred, and abused its discretion during the entire proceedings by its deliberate refusal and failure to acknowledge the Structural Nature of ICWA Rights under 25 U.S.C. § 1901 et seq.

40. That the U.S. District Court was biased, erred, and abused its discretion when it closed the case without reaching the merits of Rodriguez's claims.

41. That Rodriguez's rights under ICWA 25 U.S.C. §§ 1911, 1912, and 1914 were violated in the State Court proceedings.

42. That the Montana State Court terminations of Rodriguez's parental rights to his Indian children J.R. and B.R. in Cause No. ADN-12-150 and ADN-12-151 are VOID for violations of ICWA 25 U.S.C. §§ 1911, 1912, and 1914.

## b) REVERSE

Reverse the U.S. District Court's Final Order (D. Ct. Doc. 250) and Final Judgment (D. Ct. Doc. 251), as well as any and all underlying Orders dismissing his ICWA., § 1983, and constitutional claims, vacating or reversing the Clerk's Entries of Default, denying leave to amend, and granting summary judgment.

## c) VACATE AND REMAND

Vacate the U.S. District Court's Final Order (D. Ct. Doc. 250) and Final Judgment (D. Ct. Doc. 251), and remand for further proceedings.

pg 48 of 49

25-4432

**d) REMAND WITH INSTRUCTIONS TO:**

1. Appoint Counsel to Represent Plaintiff Juan Anastasio Rodriguez.
2. Reinstate all claims under the I.C.W.A., 25 U.S.C. §§ 1911, 1912, and 1914, 42 U.S.C. § 1983, and the U.S. Constitution.
3. Ensure and direct proper Service of Process on all unserved Defendants in accordance with Rule 4(c)(3) and 28 U.S.C. § 1915(d).
4. Re-enter Clerk's Entry of Default against Defendants Amanda Hope Fortenberry, Anna Fisher, and Judith Hartelius.
5. Grant Rodriguez's Motion for Default Judgment against Defendants Amanda Hope Fortenberry, Anna Fisher, and Judith Hartelius.
6. Enter Clerk's Entry of Default against State of Montana-DPHHS Defendants and Defendant Lisa Anderson Mangan.
7. Grant Rodriguez's Motion for Default Judgment against State of Montana-DPHHS Defendants and Defendant Lisa Anderson Mangan.
8. Conduct further proceedings to include Jury Trial if necessary.
9. Invalidate the state court proceedings terminating Rodriguez's parental rights.

**e) CONSIDER REASSIGNMENT**

Consider reassignment to another U.S. District Court Judge on remand pursuant to this Honorable Court's supervisory authority, if warranted, to ensure fair and impartial adjudication and compliance with Federal Procedure and Statutory Rights.

**f) FURTHER RELIEF**

Grant any further relief that this Honorable Court deems just, equitable, proper, fair, and in the Interest of Justice.

Dated   3-27-2026

*[signature]*

pg 49 of 49

25-4432

# CERTIFICATE OF SERVICE

I, Juan Anastasio Rodriguez, do hereby certify that I participate in the e-filing Pilot Project which is mandatory for all prisoners, in all custody levels at MSP. that pursuant to standing order NO. BMM-6, is hereby complied with.

I do hereby file the following documents with the Court:

1.) Appellant's Informal Opening Brief  49 pgs
2.)
3.)
4.)
5.)
6.)
7.)
8.)
9.)
10.)

Per STANDING ORDER No.BMM-6 once a document is filed in the court system, the document is automatically served upon the opposing counsel or party ( If they have entered an appearance), so there is no need for the prisoner litigent to mail copies to the other parties, If there are other partied to the case that are not registered CM/EFT users, the clerk will mail a copy of the prisoner litigents electronically filed document to each non-registered party on behalf of the prisoner litigaent via the United States Postal System.

Parties/Defendants to the case are as follows:

~~Rebecca Narmore~~
~~Assistant Attorney General~~
~~Agency Legal Service Bureau~~
~~1712 Ninth Ave.~~
~~P.O. Box 201440~~
~~Helena, MT 59620~~

Thomas J. Jodoin
Montana Department of Administration
Risk Management and Tort Defense
1125 11th Ave.
P.O. Box 201124
Helena, MT 59620

Attorney for Defendants: 1)Theresa Diekhans,2)April (Jones) Palmer,3)Heather Smith,4)Becci Delinger,5)Trevor Lewis,6)Thesresa Adams,7)Sahrits Jones-Jesee, 8)Brandi (Campbell) Loch,9)Alana Kietzman.

Antonia Pl Marra and Amber Henning of:
Marra, Evenson & Levine, P.C.
2 Railroad Square, Suite C
P.O. Box 1525
Great Falls, MT 59403
Attorney for Defendant: 1) Lisa Anderson Mangan.

DATED THIS 27th day of March, 2026

Juan Anastasio Rodriguez, AO 3005929
Plaintiff Pro Se